# EXHIBIT A

---

### AMENDED AND RESTATED

### LIMITED PARTNERSHIP AGREEMENT OF

### INTERNATIONAL LINEN, LTD.

---

**THE PARTNERSHIP INTERESTS OF INTERNATIONAL LINEN, LTD. HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, THE SECURITIES LAWS OF ANY STATE OR ANY OTHER SECURITIES LAWS IN RELIANCE UPON EXEMPTIONS FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT AND SUCH LAWS. SUCH PARTNERSHIP INTERESTS MUST BE ACQUIRED FOR INVESTMENT ONLY AND MAY NOT BE OFFERED FOR SALE, PLEDGED, HYPOTHECATED, SOLD, ASSIGNED OR TRANSFERRED AT ANY TIME EXCEPT IN COMPLIANCE WITH (I) THE SECURITIES ACT, ANY APPLICABLE STATE SECURITIES LAWS, AND ANY OTHER APPLICABLE SECURITIES LAWS; AND (II) THE TERMS AND CONDITIONS OF THIS AGREEMENT OF LIMITED PARTNERSHIP, AS AMENDED FROM TIME TO TIME. THEREFORE, PURCHASERS OF SUCH PARTNERSHIP INTERESTS WILL BE REQUIRED TO BEAR THE RISK OF THEIR INVESTMENT FOR AN INDEFINITE PERIOD OF TIME.**

**AMENDED AND RESTATED**

**LIMITED PARTNERSHIP AGREEMENT OF**

**INTERNATIONAL LINEN, LTD.**

<u>TABLE OF CONTENTS</u>

### ARTICLE 1: DEFINITIONS
1.1 Certain Definitions.................................................................1
1.2 Other Definitions.................................................................5

### ARTICLE 2: ORGANIZATION
2.1 Formation.................................................................5
2.2 Name.................................................................6
2.3 Registered Office; Registered Agent; Principal Office; Other Offices. ...........6
2.4 Purposes.................................................................6
2.5 Certificate; Foreign Qualification.................................................................6
2.6 Term.................................................................6
2.7 Merger or Consolidation.................................................................6

### ARTICLE 3: DISPOSITIONS OF INTERESTS
3.1 Partners.................................................................7
3.2 Additional Partners.................................................................7
3.3 Restrictions on the Disposition of an Interest. ...........................................7
  (a) In General.................................................................7
  (b) Permitted Transferees.................................................................7
  (c) Preferential Right of Purchase.................................................................7
  (d) Death of Partner's Spouse; Termination of Marital Relationship; Partition of Community Property.................................................................8
  (e) Death of a Partner/Gifts.................................................................10
  (f) Documentation and Agreements Incident to Disposition. ...........................12
  (g) Security and Tax Issues Incident to Disposition.................................................................12
  (h) Closing of Certain Dispositions.................................................................13
3.4 Interests in a Partner.................................................................13
3.5 Representations and Warranties.................................................................14
3.6 Certificates.................................................................14

### ARTICLE 4: CAPITAL CONTRIBUTIONS
4.1 Capital Contributions.................................................................15
4.2 Return of Contributions.................................................................15
4.3 Advances by Partners.................................................................15
4.4 Capital Accounts.................................................................15

### ARTICLE 5: ALLOCATIONS AND DISTRIBUTIONS
5.1 Allocations.................................................................16

|  | (a) | In General. | 16 |
|  | (b) | Transferred Interests. | 16 |
| 5.2 | | Distributions. | 16 |
|  | (a) | Net Cash Flow; Tax Distributions. | 16 |
|  | (b) | Property. | 17 |

**ARTICLE 6: MANAGEMENT AND OPERATION**

| 6.1 | | Management of Partnership Affairs. | 17 |
|  | (a) | By Managing General Partner. | 17 |
|  | (b) | Other Partners Lack Authority. | 17 |
|  | (c) | Third Party Reliance. | 17 |
|  | (d) | Officers. | 17 |
| 6.2 | | Major Decisions. | 17 |
|  | (a) | Need Approval of Required Interest. | 17 |
|  | (b) | List of Major Decisions. | 18 |
| 6.3 | | Compensation. | 18 |
| 6.4 | | Standards and Conflicts. | 18 |
|  | (a) | Managing General Partner's Liability to Other Partners. | 18 |
|  | (b) | Other Business Ventures. | 19 |
|  | (c) | Transactions With Partners. | 19 |
| 6.5 | | Indemnification. | 19 |
| 6.6 | | Power of Attorney. | 19 |

**ARTICLE 7: RIGHTS OF OTHER PARTNERS**

| 7.1 | | Information. | 20 |
| 7.2 | | Withdrawal. | 20 |
| 7.3 | | Consents and Voting. | 20 |
|  | (a) | In Sole Discretion of Partners. | 20 |
|  | (b) | Procedure. | 20 |
| 7.4 | | Meetings. | 20 |

**ARTICLE 8: TAXES**

| 8.1 | Tax Returns. | 20 |
| 8.2 | Tax Elections. | 21 |
| 8.3 | Tax Matters Partner and Partnership Representative. | 21 |

**ARTICLE 9: BOOKS, RECORDS, REPORTS, AND BANK ACCOUNTS**

| 9.1 | Books and Records. | 22 |
| 9.2 | Inspection. | 22 |
| 9.3 | Bank Accounts. | 22 |

**ARTICLE 10: WITHDRAWAL, BANKRUPTCY, REMOVAL, DEATH, ETC.**

| 10.1 | | Withdrawal, Bankruptcy, Etc. of General Partner. | 23 |
|  | (a) | General Partner Agrees Not to Withdraw. | 23 |
|  | (b) | Cessation of General Partner Status. | 23 |
|  | (c) | Selection of New Managing General Partner. | 23 |
| 10.2 | | Removal of Managing General Partner. | 24 |

| | | |
|---|---|---|
| 10.3 | Conversion of Interest. | 24 |
| 10.4 | Bankrupt Partners | 24 |

**ARTICLE 11: DISSOLUTION, LIQUIDATION, AND TERMINATION**

| | | |
|---|---|---|
| 11.1 | Dissolution. | 25 |
| (a) | In General. | 25 |
| (b) | Automatic Reconstitution. | 26 |
| 11.2 | Liquidation and Termination. | 26 |
| 11.3 | Cancellation of Certificate. | 27 |

**ARTICLE 12: GENERAL PROVISIONS**

| | | |
|---|---|---|
| 12.1 | Offset. | 27 |
| 12.2 | Notices. | 27 |
| 12.3 | Entire Agreement; Supersedure. | 28 |
| 12.4 | Effect of Waiver or Consent. | 28 |
| 12.5 | Amendment or Modification. | 28 |
| 12.6 | Binding Effect. | 28 |
| 12.7 | Governing Law; Severability. | 28 |
| 12.8 | Further Assurances. | 28 |
| 12.9 | Waiver of Certain Rights. | 28 |
| 12.10 | Indemnification. | 28 |
| 12.11 | Counterparts. | 29 |
| 12.12 | Headings. | 29 |
| 12.13 | Deemed Assent. | 29 |
| 12.14 | Special Provisions Concerning Trustees as Partners. | 29 |

**EXHIBIT A** – Partners' Names, Addresses and Sharing Ratios

# AMENDED AND RESTATED

# LIMITED PARTNERSHIP AGREEMENT OF

# INTERNATIONAL LINEN, LTD.

This Amended and Restated Limited Partnership Agreement of International Linen, Ltd. (this "*Agreement*") is made and entered effective as of July 2, 2020 (the "*Effective Date*") by and among the Partners to amend and restate that certain Limited Partnership Agreement of International Linen, Ltd. dated January 28, 2002 by and among Azad Ahmed Khan (also known as Azad A. Khan) and Nishat Azad Khan (also known as Nishat A. Khan), as the original limited partners, and International Textile, Inc. (formerly, International Linen, Inc.), as the general partner (the "*Original Agreement*").

FOR AND IN CONSIDERATION OF the mutual covenants, rights, and obligations set forth herein, the benefits to be derived therefrom, and other good and valuable consideration, the receipt and the sufficiency of which each Partner acknowledges and confesses, the Partners agree as follows:

## ARTICLE 1:  DEFINITIONS

*1.1*     *Certain Definitions.*   As used in this Agreement, the following terms shall have the following meanings:

"*Act*" means the Texas Business Organizations Code (including Title 4, entitled Partnerships, and all other relevant provisions thereof) and any successor statute, as amended from time to time.

"*Affiliate*" means, with respect to any Person, any other Person who Controls, is Controlled by or is under common Control with that first person.

"*Appraised Value*," for purposes of determining the sale price of a Partnership Interest (or Spouse's Fraction) incident to an exercise of an option to purchase under Section 3.3(d), 3.3(e), or 10.4, means the fair market value of the subject Partnership Interest (or Spouse's Fraction), as fixed by agreement or, if no agreement is reached concerning fair market value on or before the 60th day following the exercise of the option, by an independent appraiser mutually agreeable to both the Person (or its representative) whose Partnership Interest (or Spouse's Fraction) is to be acquired through the exercise of an option and the Person(s) who exercised the option to purchase.  If such Persons fail to agree on an independent appraiser, any of such Persons may petition the United States District Judge for the Southern District of Texas (Houston Division) then senior in service to designate an independent appraiser.  The determination of the independent appraiser, however designated, and such appraiser's determination of the fair market value of the Partnership Interest (or Spouse's Fraction) is final and binding on all concerned.  The cost of any such appraisal shall be paid one-half by the Person (or its representative) whose Partnership Interest (or Spouse's Fraction) is Disposed of incident to the exercise of an

option and one-half by the Partnership or, if applicable, by the Partner(s) who exercised the option to purchase such Partnership Interest (or Spouse's Fraction).

"*Agreement*" has the meaning given that term in the introductory paragraph hereof.

"*Bankrupt Partner*" means any Partner (whether a General Partner or a Limited Partner) with respect to which an event of the type described in section 153.155(a)(4) or (5) of the Act has occurred, subject to the lapsing of any period of time therein specified.

"*Business Day*" means any day other than a Saturday, a Sunday, or a holiday on which banks in the State of Texas generally are closed.

"*Capital Contribution*" means any contribution by a Partner to the capital of the Partnership.

"*Certificate*" means the certificate of limited partnership of the Partnership, as amended or restated from time to time.

"*Code*" means the Internal Revenue Code of 1986 and any successor statute, as amended from time to time.

"*Commencement Date*" means February 13, 2002, which is the date the Certificate was first filed with the Secretary of the State of Texas.

"*Commitment*" means, subject in each case to adjustments on account of Dispositions of Partnership Interests permitted by this Agreement, the financial or other commitment established for the issuance of a Partnership Interest to the current Partners of the Partnership or to any Partner admitted under Section 3.2, 10.1(c), or 10.2, whichever is applicable.

"*Control*" or "*Controls*" means, with respect to a Person that is a corporation, the right to exercise, directly or indirectly, more than 50% of the voting rights attributable to the shares of the controlled corporation and, with respect to a Person that is not a corporation, the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of the controlled Person.

"*Default Interest Rate*" means a rate per annum equal to the lesser of (a) 2% plus a varying rate per annum that is equal to the "prime rate" quoted in the money rates section of the Wall Street Journal as the base rate on corporate loans posted by most of the United States largest banks, with adjustments in that varying rate to be made on the same date as any change in that rate, and (b) the maximum rate permitted by applicable law.

"*Descendants*" means the children of the person or persons designated and the descendants of such children, including those who are legally adopted before becoming age 18. "*Khan Descendants*" means the Descendants of Nishat Azad Khan and Azad Ahmed Khan, deceased.

2

"*Dispose*," "*Disposing*," or "*Disposition*" means (a) a sale, assignment, transfer, exchange, mortgage, pledge, grant of a security interest, or other disposition or encumbrance, or the acts thereof, and (b) in the case of a corporation, partnership or limited liability company classified as a Family Member, any other event that either causes such entity not to be under the Control of Persons who are Family Members in the same Family Line as was such entity prior to that event or results in Persons who are not Family Members in such Family Line owning 50% or more of such entity.

"*Disposition Notice*" shall have the meaning attributed to it in Section 3.3(c).

"*Family Line*" means, with respect to each child of Nishat Azad Khan and Azad Ahmed Khan, deceased, (a) such child, (b) all of such child's Descendants, (c) any trust having as its primary beneficiaries such child and/or such child's Descendants, (d) any trust established for the benefit of the spouse of Nishat Azad Khan, the spouse of such child, or the spouse of a Descendant of such child which lasts for the lifetime of such spouse and has as its sole other beneficiaries (whether current or remainder) Persons who are otherwise classified as being within such child's Family Line under this definition (such as a trust meeting the requirements of section 2056(b)(7) of the Code), and (e) any corporation, partnership or limited liability company which is solely owned by Persons otherwise classified as being within such child's Family Line under this definition.  In addition, Nishat Azad Khan and any trust having as its primary beneficiary Nishat Azad Khan shall be considered to be in each of such Family Lines.

"*Family Member*" means (a) Nishat Azad Khan, (b) any Khan Descendant, (c) any trust having as its primary beneficiaries Nishat Azad Khan and/or Persons who are Khan Descendants, (d) any trust established for the benefit of either the spouse of Nishat Azad Khan or the spouse of any Khan Descendant which lasts for the lifetime of such spouse and has as its sole other beneficiaries (whether current or remainder) Persons who are Khan Descendants (such as a trust meeting the requirements of section 2056(b)(7) of the Code), or (e) any corporation, partnership or limited liability company which is solely owned by Persons otherwise classified as Family Members under this definition.

"*First Partner*" shall have the meaning attributed to it in Section 3.3(c).

"*General Interest Rate*" means a rate per annum equal to the lesser of (a) a varying rate per annum that is equal to the "prime rate" quoted in the money rates section of the Wall Street Journal as the base rate on corporate loans posted by most of the United States largest banks, with adjustments in that varying rate to be made on the same date as any change in that rate, and (b) the maximum rate permitted by applicable law.

"*General Partner*" means any Person executing this Agreement as of the date hereof as a general partner or hereafter admitted to the Partnership as a general partner as provided in this Agreement, but does not include any Person who has ceased to be a general partner in the Partnership.

"*Limited Partner*" means any Person executing this Agreement as of the date hereof as a limited partner or hereafter admitted to the Partnership as a limited partner as provided

in this Agreement, but does not include any Person who has ceased to be a limited partner in the Partnership.

"*Managing General Partner*" means the General Partner designated as Managing General Partner as provided in this Agreement.  The current Managing General Partner is International Textile, Inc.

"*Net Cash Flow*" means all cash funds derived by the Partnership (including interest received on reserves, borrowings and capital transactions), without reduction for any non-cash charges, but less cash funds used (i) to pay current operating expenses, debt payments, capital improvements and replacements and (ii) to establish reasonable reserves for future expenses, investments, costs and contingencies as determined by the Managing General Partner.  Any property contributed to the Partnership by the Partners, any borrowed funds or any cash generated upon the sale of any of the Partnership property, including Partnership property which is purchased with borrowed funds, and including the cash attributable to appreciation in value, (i) shall not be considered derived by the Partnership for purposes of determining Net Cash Flow and (ii) shall be considered necessary for future investments.

"*Partner*" means any General Partner or Limited Partner.

"*Partnership*" has the meaning given it in Section 2.1.

"*Partnership Interest*" means the interest of a Partner in the Partnership, including, without limitation, rights to distributions (liquidating or otherwise), to allocations, to information, to preferential purchase rights and options to purchase hereunder, and to consent or approve.

"*Partnership Major Decision*" has the meaning given it in Section 6.2(b).

"*Payment Terms*" means (i) with respect to the payment to be made to a Bankrupt Partner pursuant to Section 10.4, four equal consecutive annual payments, together with interest on the outstanding balance from time to time at the General Interest Rate (from the date on which such Partner becomes bankrupt), with the first such annual payment being due on the first anniversary of the day on which such Partner becomes bankrupt; (ii) with respect to the payment (if any) to be made under Section 3.3(d), four equal consecutive annual installments, together with interest on the outstanding balance from time to time at the General Interest Rate (from the day of termination of the marital relationship or of the partition of the community property in question), with the first such annual payment being due on the first anniversary of the day of termination of the marital relationship or of the partition of the community property in question; and (iii) with respect to the payment to be made to the personal representative or heirs of a deceased Partner or to a Donor Partner under Section 3.3(e), four equal consecutive annual installments, together with interest on the outstanding balance from time to time at the General Interest Rate (from the date of death in the case of a deceased Partner or the date of the Gift Notice in the case of a Donor Partner), with the first such annual payment being due on the first anniversary of the day on which such Partner dies (or the date of the Gift Notice in the case of a Donor Partner).

"*Person*" includes an individual, business trust, registered limited liability partnership, association, limited liability company, government, governmental subdivision, governmental agency, governmental instrumentality, partnership, limited partnership, trust, estate, corporation, custodian, trustee, executor, administrator, nominee, or any other legal or commercial entity in its own or a representative capacity, regardless of whether the entity is formed under the laws of Texas or any other jurisdiction.

"*Required Interest*" means Partners (other than the Managing General Partner) having Sharing Ratios in the aggregate equal to 100% of the Sharing Ratios of all Partners other than the Managing General Partner.

"*Second Partners*" shall have the meaning attributed to it in Section 3.3(c).

"*Sharing Ratio*" means, subject in each case to adjustments on account of Dispositions of Partnership Interests permitted by this Agreement and the issuance of Partnership Interests under Section 3.2, 10.1(c), or 10.2, (i) in the case of the current Partners of the Partnership, the Sharing Ratios set forth in Exhibit A, and (ii) in the case of any other Partner, the Sharing Ratio established with respect to such Partner under Section 3.2, 10.1(c), 10.2, or 10.4 in connection with the admission of such Partner.

"*Spouse's Fraction*" means that portion (if any) of a Partner's Partnership Interest that such Partner's spouse, such Partner's former spouse, such Partner's spouse's estate or such Partner's former spouse's estate is determined to own by a court of competent jurisdiction or, in the absence of a judicial determination, by a written agreement between the Partner and such spouse, such spouse's estate, such former spouse, or such former spouse's estate.

"*Tax Distribution Percentage*" means the percentage determined by the Managing General Partner from time to time so that the amounts distributed pursuant to Section 5.2(a) are an approximation of the cumulative federal income tax liabilities of the Partners calculated at the highest marginal federal income tax rate generally applicable to individuals, it being understood that the Managing General Partner may disregard marginal federal income tax rates that are unlikely to be applicable to a material number of Partners, as determined by the Managing General Partner.

**1.2**    **Other Definitions.**  Other terms defined herein have the meanings given them.

## ARTICLE 2:  ORGANIZATION

**2.1**    **Formation.**  On the Commencement Date, the Persons executing the Original Agreement formed a limited partnership (the "*Partnership*") for the purposes set forth in the Original Agreement.  On and after the Effective Date, the Partners executing this Agreement shall continue the Partnership for the purposes as hereinafter set forth under and pursuant to the Act.

**2.2     Name.**  The name of the Partnership is "International Linen, Ltd." and all Partnership business shall be conducted in that name or such other names that comply with applicable law as the Managing General Partner may select from time to time.

**2.3     Registered Office; Registered Agent; Principal Office; Other Offices.**  The registered office of the Partnership in the State of Texas shall be at such place as the Managing General Partner may designate from time to time.  The registered agent for service of process on the Partnership in the State of Texas or any other jurisdiction shall be such Person or Persons as the Managing General Partner may designate from time to time.  The principal office of the Partnership shall be at 1906 Sand Hollow Lane, Katy, Texas 77450, or at such other place as the Managing General Partner may designate from time to time, which need not be in the State of Texas, and the Partnership shall maintain records there as required by section 153.551 of the Act.  The Partnership may have such other offices as the Managing General Partner may designate from time to time.

**2.4     Purposes.**  The purposes of the Partnership are to acquire, hold, manage, invest, and Dispose of real estate, cash, securities, debt instruments, and other investments, to provide common management for the foregoing, and to engage in any other business or activity that now or hereafter may be necessary, incidental, proper, advisable, or convenient to accomplish the foregoing purposes and that is not forbidden by this Agreement or the laws of the jurisdiction in which the Partnership engages in such business.

**2.5     Certificate; Foreign Qualification.**  On or prior to the Commencement Date, the Managing General Partner executed and caused to be filed with the Secretary of State of Texas a Certificate containing information required by the Act and such other information as the Managing General Partner deemed appropriate.  Prior to conducting business in any jurisdiction other than Texas, the Managing General Partner shall cause the Partnership to comply, to the extent such matters are reasonably within the control of the Managing General Partner, with all requirements necessary to qualify the Partnership as a foreign limited partnership (or a partnership in which the Limited Partners have limited liability) in such jurisdiction.  Upon the request of the Managing General Partner, each Partner shall execute, acknowledge, swear to, and deliver all certificates and other instruments conforming with this Agreement that are necessary or appropriate to form, qualify, continue, and terminate the Partnership as a limited partnership under the laws of the State of Texas and to qualify, continue, and terminate the Partnership as a foreign limited partnership (or a partnership in which the Limited Partners have limited liability) in all other jurisdictions in which the Partnership may conduct business, and to this end the Managing General Partner may use the power of attorney described in Section 6.6.

**2.6     Term.**  The Partnership commenced on the Commencement Date and shall continue in existence until its business and affairs are wound up following dissolution automatically at the close of Partnership business on December 31, 2050, or such earlier time as this Agreement may specify.

**2.7     Merger or Consolidation.**  The Partnership may merge or consolidate with or into another limited partnership or other business entity, or enter into an agreement to do so, only with the consent of the Managing General Partner and a Required Interest.

## ARTICLE 3:  DISPOSITIONS OF INTERESTS

**3.1      Partners.**  The current general partner and limited partner of the Partnership are the Persons executing this Agreement as of the Effective Date as general partner and limited partner, respectively.

**3.2      Additional Partners.**  Except as provided in Section 10.1(c) or 10.2 with respect to the admission to the Partnership of a new Managing General Partner, no Person (including any Person to which a permitted Disposition of a Partnership Interest is made under the provisions of Section 3.3) shall be admitted to the Partnership as a general partner or as a limited partner without the prior written consent of the Managing General Partner and a Required Interest, which consents may be granted or withheld as provided in Section 7.3(a).   Any such admission must also comply with the provisions of Sections 3.3(f) and 3.3(g) and is effective only after the new Partner has so complied.  In the event the admission does not relate to the Disposition of an existing Partnership Interest, the Sharing Ratio and the Commitment of the new Partner must be specified as part of the terms of admission.

**3.3      Restrictions on the Disposition of an Interest.**

**(a)      In General.**  Except as provided in this Section 3.3, a Disposition of a Partnership Interest may be effected only with the prior written consent of the Managing General Partner and a Required Interest, which consents may be granted or withheld as provided in Section 7.3(a).  Any attempted Disposition by a Person of a Partnership Interest, or any part thereof, other than in accordance with this Section 3.3 is void and the Partnership may not recognize it.  In addition, in the case of a Disposition occurring as a result of an event that causes a corporation, partnership or limited liability company holding a Partnership Interest to cease to be under the Control of or owned in sufficient percentage by Persons who are Family Members in the same Family Line as was such entity prior to that event, such entity shall be considered to have become a Bankrupt Partner subject to the provisions of Section 10.4 on the date of such event.  It is expressly agreed that the remedy at law for breach of any of the obligations set forth in this Section 3.3 is inadequate in view of (i) the complexities and uncertainties in measuring the actual damages that would be sustained by reason of the failure of a Partner to comply fully with each of said obligations, and (ii) the uniqueness of the Partnership business and the Partnership relationship.  Accordingly, each of the aforesaid obligations shall be, and is hereby expressly made, enforceable by specific performance.

**(b)      Permitted Transferees.**   Subject to compliance with the provisions of Sections 3.3(f) and 3.3(g), any Partner may Dispose of all or part of its Partnership Interest (including by will or intestate succession) to a Family Member who is in the same Family Line as the Partner who is making the Disposition.

**(c)      Preferential Right of Purchase.**  Except for any such Disposition that is permitted under Section 3.3(b), should any Partner at any time desire to Dispose of all or a portion of its Partnership Interest pursuant to a bona fide offer from another Person, such Partner (the

7

"*First Partner*") shall promptly give notice (the "*Disposition Notice*") thereof to the other Partners. The Disposition Notice shall set forth all relevant information in respect of the proposed Disposition, including, without limitation, the name and address of the prospective acquirer and each Person that Controls the prospective acquirer, the purchase price (all of which must be payable in cash), and the terms of any delayed payment of the purchase price. Any or all of the other Partners who are Family Members in the same Family Line as the First Partner shall have an optional preferential right (exercisable by giving written notice to the First Partner at any time prior to the 45th day after their receipt of the Disposition Notice) to acquire the Partnership Interest described in the Disposition Notice. If none of such Partners exercise such option, the Partnership shall have an optional preferential right (exercisable by giving written notice to the First Partner at any time prior to the 60th day after the Managing General Partner's receipt of the Disposition Notice) to acquire the Partnership Interest described in the Disposition Notice. If neither the Partners who are Family Members in the same Family Line as the First Partner nor the Partnership exercise their respective options, any or all of the Partners, excluding the First Partner, shall have an optional preferential right (exercisable by giving written notice to the First Partner at any time prior to the 90th day after their receipt of the Disposition Notice) to acquire the Partnership Interest described in the Disposition Notice. The Partnership, or those other Partners who elect to exercise a preferential right set forth in this Section 3.3(c) ("*Second Partners*") (each in the proportion that its Sharing Ratio bears to the aggregate Sharing Ratios of all Second Partners unless otherwise agreed by all Second Partners), shall buy, and the First Partner shall sell, the Partnership Interest described in the Disposition Notice for the same purchase price and on the same terms of any delayed payment that are set forth in the Disposition Notice. If neither the Partnership nor any of the other Partners elects to exercise their respective preferential rights within the specified time periods, the First Partner shall have the right, subject to compliance with the provisions of Sections 3.3(f) and 3.3(g), to Dispose of the Partnership Interest described in the Disposition Notice strictly in accordance with the terms of the Disposition Notice for a period of sixty-five days after the expiration of the above described ninety day preferential right period. If the First Partner fails so to Dispose of the Partnership Interest within such sixty-five day period, the proposed Disposition shall again become subject to the preferential rights set forth in this Section 3.3(f).

**(d)      *Death of Partner's Spouse; Termination of Marital Relationship; Partition of Community Property.***

(i)      SPOUSES OF THE PARTNERS ARE NOT PARTNERS IN THE PARTNERSHIP, EXCEPT TO THE EXTENT THEY OTHERWISE ARE PARTNERS.

(ii)      Except as provided in Section 3.3(b) with respect to certain permitted transfers, if the spouse of a Partner predeceases such Partner and neither such Partner nor a Family Member in the same Family Line as such Partner succeeds by the spouse's will or by intestate succession to the Spouse's Fraction, written notice ("*Option Notice*") thereof (containing the names and addresses of the personal representative or heirs of such deceased spouse's estate) shall be given (by such Partner and/or by the personal representative or heirs of such Partner's deceased spouse's estate) to the other Partners no

8

later than the 30th day after the death of such Partner's spouse, and such Partner shall have an optional preferential right (exercisable by giving written notice to the personal representative or heirs of the deceased spouse's estate at any time prior to the 90th day after the death of such Partner's spouse) to acquire the Spouse's Fraction.  If such option is not exercised by such Partner, any or all of the Partners who are Family Members in the same Family Line as the Partner whose spouse has died, including such Partner, shall have an optional preferential right (exercisable by giving written notice to the personal representative or heirs of the deceased spouse's estate at any time prior to the 120th day after the death of such Partner's spouse) to acquire the Spouse's Fraction.  If neither the Partner whose spouse has died nor any of the Partners who are Family Members in the same Family Line as such Partner exercise their respective options, the Partnership shall have an optional preferential right (exercisable by giving written notice to the personal representative or heirs of the deceased spouse's estate at any time prior to the 150th day after the death of such Partner's spouse) to acquire the Spouse's Fraction.  If none of the options set forth in the foregoing provisions of this Section 3.3(d)(ii) are exercised, any or all of the Partners, including the Partner whose spouse has died, shall have an optional preferential right (exercisable by giving written notice to the personal representative or heirs of the deceased spouse's estate at any time prior to the 180th day after the death of such Partner's spouse) to acquire the Spouse's Fraction.  The Partnership, or those Partners who elect to exercise a preferential right set forth in this Section 3.3(d)(ii) ("*Option Partners*") (each in the proportion that its Sharing Ratio bears to the aggregate Sharing Ratios of all Option Partners unless otherwise agreed by all Option Partners), shall buy, and the personal representatives or heirs of the deceased spouse's estate shall sell, the Spouse's Fraction at the Appraised Value (determined as of the date of death of such Partner's deceased spouse) on the Payment Terms.

(iii)   Except as provided in Section 3.3(b) with respect to certain permitted transfers, if, upon the termination of the marital relationship of any Partner other than by death or upon the partition of community property or other Disposition of property between any Partner and such Partner's spouse, a Spouse's Fraction is established, written notice ("*Option Notice*") thereof (containing the name and address of such Partner's spouse or former spouse) shall be given (by such Partner and/or by such Partner's spouse or former spouse) to the other Partners, and the Partner with respect to whose Partnership Interest such Spouse's Fraction has occurred shall have an optional preferential right (exercisable by giving written notice to such Partner's spouse or former spouse at any time prior to the 90th day after such termination, partition or Disposition) to acquire the Spouse's Fraction. If such option is not exercised by such Partner, any or all of the Partners who are Family Members in the same Family Line as the Partner with respect to whose Partnership Interest such Spouse's Fraction has occurred, including such Partner, shall have an optional preferential right (exercisable by giving written notice to such Partner's spouse or former spouse at any time prior to the 120th day after receipt of the Option Notice) to acquire the Spouse's Fraction.  If neither the Partner with respect to whose Partnership Interest such Spouse's Fraction has occurred nor any of the Partners who are Family Members in the same Family Line as such Partner exercise their respective options, the Partnership shall have an optional preferential right (exercisable by giving written notice to such Partner's spouse or former spouse at any time prior to the 150th day after the Managing General

9

Partner's receipt of the Option Notice) to acquire the Spouse's Fraction.  If none of the options set forth in the foregoing provisions of this Section 3.3(d)(iii) are exercised, any or all of the Partners, including the Partner whose Partnership Interest is affected, shall have an optional preferential right (exercisable by giving written notice to such Partner's spouse or former spouse at any time prior to the 180th day after receipt of the Option Notice) to acquire the Spouse's Fraction.  The Partnership, or those Partners who elect to exercise a preferential right set forth in this Section 3.3(d)(iii) ("*Option Partners*") (each in the proportion that its Sharing Ratio bears to the aggregate Sharing Ratios of all Option partners unless otherwise agreed by all Option Partners), shall buy, and the spouse or former spouse of the Partner with respect to whose Partnership Interest such Spouse's Fraction has occurred shall sell, the Spouse's Fraction at the Appraised Value (determined as of the date of the termination, partition or Disposition establishing such Spouse's Fraction) on the Payment Terms.

(iv)    The payment to be made to the Partner's spouse or former spouse or its representative hereunder is in complete liquidation and satisfaction of all the rights and interest of such Partner's spouse or former spouse and its representative (and of all Persons claiming by, through, or under such Partner's spouse or former spouse and its representative) in and in respect of the Partnership, including, without limitation, the Spouse's Fraction, any Partnership Interest, any rights in specific Partnership property, and any rights against the Partnership and (insofar as the affairs of the Partnership are concerned) against the Partners, and constitutes a compromise to which all Partners have agreed pursuant to section 153.203 of the Act.

*(e)*      ***Death of a Partner/Gifts.***  The following provisions of this Section 3.3(e) only apply to Dispositions of Partnership Interests by gift or as a result of the death of a Partner to the extent such Dispositions are not permitted under Section 3.3(b):

(i)      ***Death of a Partner.***  Upon the death of a Partner, any or all of the Partners who are Family Members in the same Family Line as the deceased Partner shall have an optional preferential right (exercisable by giving written notice to the personal representatives or heirs of the deceased Partner's estate at any time prior to the 120th day after the death of the Partner) to acquire the deceased Partner's Partnership Interest.  If none of such Partners exercise such option, the Partnership shall have an optional preferential right (exercisable by giving written notice to the personal representatives or heirs of the deceased Partner's estate at any time prior to the 150th day after the death of the Partner) to acquire the deceased Partner's Partnership Interest.  If neither the Partners who are Family Members in the same Family Line as the deceased Partner nor the Partnership exercise their respective options, any or all of the other Partners shall have an optional preferential right (exercisable by giving written notice to the personal representatives or heirs of the deceased Partner's estate at any time prior to the 180th day after the death of the Partner) to acquire the deceased Partner's Partnership Interest.  The Partnership, or those other Partners who elect to exercise a preferential right set forth in this Section 3.3(e)(i) ("*Option Partners*") (each in the proportion that its Sharing Ratio bears to the aggregate sharing Ratios of all Option Partners unless otherwise agreed by all Option Partners), shall buy, and the personal representatives or heirs of the deceased Partner's estate shall sell, the

10

deceased Partner's Partnership Interest at the Appraised Value (determined as of the deceased Partner's date of death) on the Payment Terms.  The payment to be made to the heirs or personal representative of a deceased Partner's estate hereunder is in complete liquidation and satisfaction of all the rights and interest of the deceased Partner and its heirs and personal representative (and of all Persons claiming by, through, or under the deceased Partner and its heirs and personal representative) in and in respect of the Partnership, including, without limitation, any Partnership Interest, any rights in specific Partnership property, and any rights against the Partnership and (insofar as the affairs of the Partnership are concerned) against the Partners, and constitutes a compromise to which all Partners have agreed pursuant to section 153.203 of the Act.  If neither the Partnership nor any of the other Partners elects to exercise their respective preferential rights within the specified time periods, the Disposition made by the deceased Partner of his Partnership Interest shall be permitted, subject to compliance with the provisions of Sections 3.3(f) and 3.3(g).

(ii)    *Gifts.*  Should any Partner at any time desire to Dispose of all or a portion of its Partnership Interest by gift to a Person who is not a Family Member in the same such Partner, such Partner (the "*Donor Partner*") shall promptly give notice (the "*Gift Notice*") thereof to the other Partners.  The Gift Notice shall set forth all relevant information in respect of the proposed Disposition, including, without limitation, the name and address of the prospective donee and each Person that Controls the prospective donee. Any or all of the other Partners who are Family Members in the same Family Line as the Donor Partner shall have an optional preferential right (exercisable by giving written notice to the Donor Partner at any time prior to the 45th day after their receipt of the Gift Notice) to acquire the Partnership Interest described in the Gift Notice.  If none of such Partners exercise such option, the Partnership shall have an optional preferential right (exercisable by giving written notice to the Donor Partner at any time prior to the 60th day after the Managing General Partner's receipt of the Gift Notice) to acquire the Partnership Interest described in the Gift Notice.  If neither the Partners who are Family Members in the same Family Line as the Donor Partner nor the Partnership exercise their respective options, any or all of the Partners, excluding the Donor Partner, shall have an optional preferential right (exercisable by giving written notice to the Donor Partner at any time prior to the 90th day after their receipt of the Gift Notice) to acquire the Partnership Interest described in the Gift Notice.  Unless the Donor Partner revokes the Gift Notice by written notice given to all other Partners prior to the 100th day after the date of the Gift Notice (in which event the Donor Partner shall not thereafter Dispose of his Partnership Interest without again satisfying the requirements of Section 3.3), the Partnership, or those other Partners who elect to exercise a preferential right set forth in this Section 3.3(e)(ii) ("*Option Partners*") (each in the proportion that its Sharing Ratio bears to the aggregate Sharing Ratios of all Option Partners unless otherwise agreed by all Option Partners) shall buy, and the Donor Partner shall sell, the Partnership Interest described in the Gift Notice at the Appraised Value (determined as of the date of the Gift Notice) on the Payment Terms.  If neither the Partnership nor any of the other Partners elects to exercise their respective preferential rights within the specified time periods, the Donor Partner shall have the right, subject to compliance with the provisions of Sections 3.3(f) and 3.3(g), to Dispose of the Partnership Interest described in the Gift Notice strictly in accordance with the terms of the Gift Notice for a period of sixty-five days after the expiration of above described ninety day preferential

11

right period. If the Donor Partner fails so to Dispose of the Partnership Interest within such sixty-five day period, the proposed Disposition shall again become subject to the preferential rights set forth in this Section 3.3(e)(ii).

(f)     **Documentation and Agreements Incident to Disposition.**  The Partnership may not recognize for any purpose any Disposition of all or part of a Partnership Interest otherwise permitted under this Section 3.3 unless and until the Managing General Partner has received, on behalf of the Partnership, a written document (i) executed by both the Partner effecting the Disposition (or if the transfer is on account of the death, incapacity, or liquidation of the transferor, its representative) and the Person to which the Partnership Interest or part thereof is Disposed, (ii) including the notice address of the Person to which the Partnership Interest or part thereof is Disposed and, if such Person is to be admitted to the Partnership, such Person's agreement to be bound by this Agreement in respect of the Partnership Interest or part thereof being acquired, (iii) setting forth the Sharing Ratios and the Commitments after the Disposition of the Partner effecting the Disposition and the Person to which the Partnership Interest or part thereof is Disposed (which together must total the Sharing Ratio and the Commitment of the Partner effecting the Disposition before the Disposition), (iv) containing a representation and warranty that the Disposition was made in accordance with all applicable laws and regulations (including securities laws) and, if the Person to which the Partnership Interest or part thereof is Disposed is to be admitted to the Partnership, its representation and warranty that the representations and warranties in Section 3.5 are true and correct with respect to that Person, and (v) if the Person to which the Partnership Interest or part thereof is Disposed is to be admitted to the Partnership and is married, executed by such Person's spouse and including an agreement by such Person's spouse to be bound by the terms and provisions of Section 3.3(d) of this Agreement.  Unless otherwise agreed in writing by the Managing General Partner, the Partner effecting the Disposition and the Person to which the Partnership Interest or part thereof is Disposed, each Disposition and, if applicable, admission complying with the provisions of this Section 3.3(f) is effective as of the first day of the calendar month immediately succeeding the month in which the Managing General Partner receives the notification of the Disposition and the other requirements of this Section 3.3 have been met; provided, however, that if there is only one General Partner and as a result of the Disposition that General Partner would cease to be a General Partner, the transferee's admission as a General Partner is effective immediately prior to that cessation.  The Partner effecting a Disposition (or, to the extent the Managing General Partner elects, any Person to which such Disposition is made) shall pay, or reimburse the Partnership for, all costs incurred by the Partnership in connection with the Disposition (including, without limitation, the legal fees incurred in connection with the legal opinions referred to in Section 3.3(g)) on or before the tenth day after the receipt by that Person of the Partnership's invoice for the amount due.  If payment is not made by the date due, the Person owing that amount shall pay interest on the unpaid amount from the date due until paid at a rate per annum equal to the Default Interest Rate.

(g)     **Security and Tax Issues Incident to Disposition.**  For the right of a Partner to Dispose of a Partnership Interest or any part thereof or of any Person to be admitted to the Partnership in connection therewith to exist or be exercised, (i) either (A) the Partnership

12

Interest or part thereof subject to the Disposition or admission must be registered under the Securities Act of 1933, as amended, and any applicable state securities laws or (B) the Partnership must receive a favorable opinion of the Partnership's legal counsel or of other legal counsel acceptable to the Managing General Partner to the effect that the Disposition or admission is exempt from registration under those laws and (ii) the Partnership must receive a favorable opinion of the Partnership's legal counsel or of other legal counsel acceptable to the Managing General Partner to the effect that the Disposition or admission, when added to the total of all other sales, assignments, or other Dispositions within the preceding 12 months, would not result in the Partnership being considered to have terminated within the meaning of the Code. The Managing General Partner, however, may waive the requirements of this Section 3.3(g).

**(h)** **_Closing of Certain Dispositions._** If an option or preferential purchase right set forth in the preceding provisions of this Section 3.3 is exercised, the closing of the Disposition of the Partnership Interest (or Spouse's Fraction) shall be held at the principal place of business of the Partnership on a date mutually acceptable to the parties, but in no event more than sixty days after the later of (i) receipt by the First Partner of notice of the exercise by the Partnership or the Second Partner(s) of a preferential purchase right under Section 3.3(c) or (ii) the date the Appraised Value of the Partnership Interest or Spouse's Fraction is determined as respects the options to purchase under Sections 3.3(d) and 3.3(e). At such closing the following transactions shall occur:

(i) The Person whose Partnership Interest or Spouse's Fraction is the subject of such option or preferential purchase right ("_Seller_") shall (A) convey and assign with special warranty of title to the Person(s) who exercised the option or preferential purchase right ("_Buyer_") free and clear of all liens, claims, and encumbrances (other than any lien, claim, or encumbrance set forth in the Disposition Notice or otherwise expressly permitted by the Buyer) and (B) sign and deliver other documents that may be reasonably requested by Buyer to give effect to the Disposition and acquisition of such Partnership Interest or Spouse's Fraction;

(ii) The Buyer(s) shall pay to the Seller (A) in the case of a preferential purchase right under Section 3.3(c), in accordance with the terms of payment set forth in the Disposition Notice (that is, in cash, payable either 100% at the closing or in installments over time, whichever is set forth in the Disposition Notice), the purchase price specified in the Disposition Notice for the Partnership Interest described in the Disposition Notice or (B) in the case of an option under Section 3.3(d) or 3.3(e), the Appraised Value on the Payment Terms; and

(iii) Following such Disposition, the Sharing Ratios of the Partners will be adjusted to reflect the increase in the Sharing Ratios of the Buyer(s) as a result of such Disposition.

**3.4** **_Interests in a Partner._** A Partner that is not a natural person may not cause or permit an interest, direct or indirect, in itself to be Disposed of such that, after the Disposition, the Partnership would be considered to have terminated within the meaning of section 708 of the Code.

**3.5**     ***Representations and Warranties.***  Each Partner represents and warrants to the Partnership and each other Partner that (a) if that Partner is a corporation, it is duly organized, validly existing, and in good standing under the law of the state of its incorporation and is duly qualified and in good standing as a foreign corporation in the jurisdiction of its principal place of business (if not incorporated therein), and if a General Partner, in the State of Texas, (b) if that Partner is a partnership, trust, or other entity, it is duly formed, validly existing, and (if applicable) in good standing under the law of the state of its formation, and if required by law is duly qualified to do business and (if applicable) in good standing in the jurisdiction of its principal place of business (if not formed therein) and, if a General Partner, in the State of Texas, and the representations and warranties in clause (a) or (b), as applicable, are true and correct with respect to each partner (other than limited partners), trustee, or other member thereof, (c) that Partner has full corporate, partnership, trust, or other applicable power and authority to enter into this Agreement and to perform its obligations hereunder and all necessary actions by the board of directors, shareholders, partners, trustees, beneficiaries, or other Persons necessary for the due authorization, execution, delivery, and performance of this Agreement by that Partner have been duly taken, (d) that Partner has duly executed and delivered this Agreement, and (e) that Partner's authorization, execution, delivery, and performance of this Agreement do not conflict with any other agreement or arrangement to which that Partner is a party or by which it is bound.

**3.6**     ***Certificates.***  Certificates in the form determined by the Managing General Partner may be delivered representing all Partnership Interests to which the Partners are entitled. Such certificates shall be consecutively numbered and shall be entered in the books of the Partnership as they are issued.  Each certificate shall state on the face thereof that: (i) the Partnership is formed under the laws of the State of Texas, (ii) the name of the holder, (iii) the Partnership Interest represented by the certificate, (iv) a conspicuous statement (similar in form to the statement below) that the Partnership Interest represented by the certificate is subject to transfer restrictions, and (v) such other matters as the Managing General Partner may determine or as may be required by section 3.202(c) of the Act.  The certificate shall state on the back thereof the following restrictions:

> **THE PARTNERSHIP INTEREST REPRESENTED BY THIS CERTIFICATE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR THE SECURITIES LAWS OF ANY STATE, AND MAY NOT BE OFFERED FOR SALE, SOLD OR OTHERWISE TRANSFERRED EXCEPT PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT UNDER THE SECURITIES ACT AND ANY APPLICABLE STATE SECURITIES LAWS, OR PURSUANT TO AN EXEMPTION FROM REGISTRATION UNDER THE SECURITIES ACT AND ANY APPLICABLE STATE SECURITIES LAWS.  IN ADDITION, THE PARTNERSHIP INTEREST REPRESENTED BY THIS CERTIFICATE IS SUBJECT TO RESTRICTIONS ON TRANSFERS UNDER THE AGREEMENT OF LIMITED PARTNERSHIP, AND ANY PURPORTED TRANSFER NOT MADE IN ACCORDANCE**

**WITH THE AGREEMENT OF LIMITED PARTNERSHIP IS VOID AND OF NO EFFECT.**

## ARTICLE 4:  CAPITAL CONTRIBUTIONS

**4.1**    ***Capital Contributions.***   No Partner shall be obligated to make any Capital Contributions to the Partnership.

**4.2**    ***Return of Contributions.***   A Partner is not entitled to the return of any part of its Capital Contribution or to be paid interest in respect of either its capital account or its Capital Contribution.  An unrepaid Capital Contribution is not a liability of the Partnership or of any Partner.  A Partner is not required to contribute or to lend any cash or property to the Partnership to enable the Partnership to return any Partner's Capital Contribution.

**4.3**    ***Advances by Partners.***   If the Partnership does not have sufficient cash to pay its obligations, the Managing General Partner, or any other Partner(s) that may agree to do so with the Managing General Partner's consent, may advance all or part of the needed funds to or on behalf of the Partnership.  Payment by a General Partner on account of liability as a matter of law for Partnership obligations is deemed to be an advance under this Section 4.3.  An advance described in this Section 4.3 constitutes a loan from the Partner to the Partnership, bears interest at the General Interest Rate from the date of the advance until the date of payment, and is not a Capital Contribution.

**4.4**    ***Capital Accounts.***   A capital account shall be established and maintained for each Partner.  Each Partner's capital account (a) shall be increased by (i) the amount of money contributed by that Partner to the Partnership, (ii) the fair market value of property contributed by that Partner to the Partnership (net of liabilities secured by such contributed property that the Partnership is considered to assume or take subject to under section 752 of the Code), and (iii) allocations to that Partner of Partnership income and gain (or items thereof), including income and gain exempt from tax and income and gain described in Treas. Reg. §1.704-1(b)(2)(iv)(g), but excluding income and gain described in Treas. Reg. §1.704-1(b)(4)(i), and (b) shall be decreased by (i) the amount of money distributed to that Partner by the Partnership, (ii) the fair market value of property distributed to that Partner by the Partnership (net of liabilities secured by such distributed property that such Partner is considered to assume or take subject to under section 752 of the Code), (iii) allocations to that Partner of expenditures of the Partnership described in section 705(a)(2)(B) of the Code, and (iv) allocations of Partnership loss and deduction (or items thereof), including loss and deduction described in Treas. Reg. §1.704-1(b)(2)(iv)(g), but excluding items described in clause (b)(iii) above and loss or deduction described in Treas. Reg. §1.704-1(b)(4)(i) or §1.704-1(b)(4)(iii).  The Partners' capital accounts also shall be maintained and adjusted as permitted by the provisions of Treas. Reg. §1.704-1(b)(2)(iv)(f) and as required by the other provisions of Treas. Reg. §1.704-1(b)(2)(iv) and §1.704-1(b)(4), including adjustments to reflect the allocations to the Partners of depreciation, depletion, amortization, and gain or loss as computed for book purposes rather than the allocation of the corresponding items as computed for tax purposes, as required by Treas. Reg. §1.704-1(b)(2)(iv)(g).  A Partner that has more than one interest in the Partnership shall have a

15

single capital account that reflects all such interests, regardless of the class of interests owned by such Partner and regardless of the time or manner in which such interests were acquired.  Upon the transfer of all or part of an interest in the Partnership, the capital account of the transferor that is attributable to the transferred interest in the Partnership shall carry over to the transferee Partner in accordance with the provisions of Treas. Reg. §1.704-1(b)(2)(iv)(1).

## ARTICLE 5:  ALLOCATIONS AND DISTRIBUTIONS

### 5.1    *Allocations.*

*(a)*    *In General.*  Except as may be required by section 704(c) of the Code and Treas. Reg. §1.704-1(b)(2)(iv)(f)(4), and subject to the provisions of Section 11.2, all items of income, gain, loss, deduction, and credit of the Partnership shall be allocated among the Partners in accordance with their Sharing Ratios.

*(b)*    *Transferred Interests.*  All items of income, gain, loss, deduction, and credit allocable to any Partnership Interest that may have been transferred shall be allocated between the transferor and the transferee based on the portion of the calendar year during which each was recognized as owning that Partnership Interest, without regard to the results of Partnership operations during any particular portion of that calendar year and without regard to whether cash distributions were made to the transferor or the transferee during that calendar year; provided, however, that this allocation must be made in accordance with a method permissible under section 706 of the Code and the regulations thereunder.

### 5.2    *Distributions.*

*(a)*    *Net Cash Flow; Tax Distributions.*  From time to time during each fiscal year, the Managing General Partner may distribute any part or all of the Net Cash Flow for such fiscal year (or such shorter period for which the distribution is made) to the Partners in accordance with their respective Sharing Ratios.  Notwithstanding the foregoing, the Managing General Partner shall distribute an amount of cash to the Partners, pro rata in accordance with each Partner's Sharing Ratio, so as to cause the aggregate amount of cash distributed to the Partners pursuant to this Section 5.2(a) with respect to each calendar year to at least equal the Tax Distribution Percentage of the net taxable income and gain allocated or estimated to be allocated to all Partners pursuant to this Partnership Agreement in respect of such calendar year.  Each calendar quarter the Managing General Partner may estimate the distributions required to be made to the Partners pursuant to this Section 5.2(a) and the Partnership may distribute such amounts quarterly to the Partners.  Promptly following the end of the calendar year, the Managing General Partner shall calculate the cash distributions to be made to the Partners in order to comply with this Section 5.2(a) and shall make a final cash distribution in respect of such calendar year in order to cause the aggregate cash distributions to Partners during the calendar year to meet the requirements of this Section 5.2(a).  In any event, the Managing General Partner shall distribute all of the Net Cash Flow to the Partners in accordance with their respective

Sharing Ratios no more than ninety (90) days after each fiscal year. No distribution under this Section 5.2(a) shall have the effect of changing any of the Partnership Interests.

*(b)*      *Property.*   From time to time the Managing General Partner also may cause property of the Partnership other than cash to be distributed to the Partners, which distribution must be made in accordance with their respective Sharing Ratios and may be made subject to existing liabilities and obligations. Immediately prior to such a distribution, the capital accounts of the Partners shall be adjusted as provided in Treas. Reg. § 1.704-1(b)(2)(iv)(f).

## ARTICLE 6:  MANAGEMENT AND OPERATION

*6.1*      *Management of Partnership Affairs.*

*(a)*      *By Managing General Partner.*   Except for situations in which the approval of other Partners is expressly required by this Agreement or by nonwaivable provisions of applicable law, the Managing General Partner shall have full, complete, and exclusive authority to manage and control the business, affairs, and properties of the Partnership, to make all decisions regarding those matters, and to perform any and all other acts or activities customary or incident to the management of the Partnership's business.

*(b)*      *Other Partners Lack Authority.*   No Partner (other than the Managing General Partner) has the authority or power to act for or on behalf of the Partnership, to do any act that would be binding on the Partnership, or to incur any expenditures on behalf of the Partnership (except as provided in Section 6.1(d) in the case of an officer who is a Partner).

*(c)*      *Third Party Reliance.*   Any Person dealing with the Partnership, other than a Partner, may rely on the authority of the Managing General Partner in taking any action in the name of the Partnership without inquiry into the provisions of this Agreement or compliance herewith, regardless of whether that action actually is taken in accordance with the provisions of this Agreement.

*(d)*      *Officers.*   The Managing General Partner may elect one or more officers of the Partnership, who shall hold the office or offices specified by the Managing General Partner for such terms and shall exercise such powers and perform such duties as shall be determined from time to time by the Managing General Partner; and each officer of the Partnership shall hold office until his successor is chosen and qualified or until his earlier resignation or removal. Any officer elected by the Managing General Partner may be removed at any time by the Managing General Partner. Any vacancy occurring in any office of the Partnership may be filled by the Managing General Partner at any time. The salaries of all officers of the Partnership shall be fixed by the Managing General Partner.

*6.2*      *Major Decisions.*

*(a)*      *Need Approval of Required Interest.*   All Partnership Major Decisions shall require the approval of a Required Interest. Accordingly, notwithstanding anything in this

Agreement to the contrary, neither a Partner nor the Managing Partner shall have the right or power to make any commitment or engage in any undertaking on behalf of the Partnership in respect of a Partnership Major Decision unless and until a Required Interest has authorized same.

*(b)*      ***List of Major Decisions.***   The Partnership Major Decisions are:

(i)      The relocation of the principal place of business of the Partnership to a location other than in the State of Texas;

(ii)      The exercise by the Partnership of any purchase option granted under Section 3.3 or 10.4;

(iii)      Any loan to a Partner of any cash or property of the Partnership;

(iv)      The Disposition by the Partnership of all or substantially all of its assets, including a distribution of such assets to the Partners pursuant to Section 5.2;

(v)      The submission of any dispute involving the Partnership or a Partnership claim or liability to arbitration or the decision to institute any lawsuit on behalf of the Partnership; and

(vi)      The performance of any act or the taking of any action that may make it impossible to carry on the ordinary business of the Partnership.

*6.3*      ***Compensation.***   The Managing General Partner shall be entitled to such compensation (if any) as a Required Interest approves in writing from time to time.  In addition, the Partnership shall reimburse the Managing General Partner for all general and administrative expenses and overhead of the Managing General Partner attributable to the Partnership, including office expenses and overhead reasonably allocated to the Managing General Partner in instances in which the Managing General Partner shares office space, services and other facilities with other Persons.  Furthermore, the Managing General Partner shall be entitled to current reimbursement out of Partnership funds for all reasonable costs and out-of-pocket expenses paid by the Managing General Partner to third parties while acting on behalf of the Partnership.

*6.4*      ***Standards and Conflicts.***

*(a)*      ***Managing General Partner's Liability to Other Partners.***   Except as provided otherwise in this Agreement, the Managing General Partner shall conduct the affairs of the Partnership in good faith toward the best interests of the Partnership.  **THE MANAGING GENERAL PARTNER IS NOT LIABLE TO THE PARTNERS OR THE PARTNERSHIP FOR ITS OR ITS AFFILIATE'S ACTS (OR THE ACTS OF THEIR RESPECTIVE OFFICERS, DIRECTORS, SHAREHOLDERS, PARTNERS, MANAGERS, MEMBERS, TRUSTEES, REPRESENTATIVES, AGENTS OR EMPLOYEES) OF ORDINARY NEGLIGENCE AND SHALL BE LIABLE FOR ERRORS OR OMISSIONS IN PERFORMING ITS DUTIES WITH**

**RESPECT TO THE PARTNERSHIP ONLY IN THE CASE OF BAD FAITH, GROSS NEGLIGENCE, OR BREACH OF THE PROVISIONS OF THIS AGREEMENT, BUT NOT OTHERWISE**.  The Managing General Partner shall devote such time and effort to the Partnership business and operations as is necessary to promote fully the interests of the Partnership; however, neither the Managing General Partner nor any other General Partner must devote full time to Partnership business.

*(b)*      *Other Business Ventures.*  Subject to the other provisions of this Agreement, the Managing General Partner and each other Partner at any time and from time to time may engage in and possess interests in other business ventures of any and every type and description, independently or with others, including ones in competition with the Partnership, with no obligation to offer to the Partnership or any other Partner the right to participate therein.   Further, each Partner is free to participate in any investment opportunity of which it becomes aware without any obligation to the other Partners or to the Partnership, including investment opportunities in competition with or which may be in the financial interest of the Partnership or of the other Partners.

*(c)*      *Transactions With Partners.*  The Partnership may transact business with any Partner or Affiliate of a Partner, provided the terms of transactions with a Managing General Partner are no less favorable than those the Partnership could obtain from unrelated third parties.

*6.5*      *Indemnification.*  To the fullest extent permitted by law, and subject to the procedures in Chapter 8 of the Act, the Partnership shall indemnify each General Partner, its Affiliates, and their respective officers, directors, shareholders, partners, managers, members, trustees, representatives, agents and employees and hold them harmless from and against all losses, costs, liabilities, damages, and expenses (including, without limitation, costs of suit and attorney's fees) any of them may incur as a general partner in the Partnership or in performing the obligations of that General Partner with respect to the Partnership, **SPECIFICALLY INCLUDING THE SOLE, PARTIAL, OR CONCURRENT NEGLIGENCE OF THE PERSON INDEMNIFIED**, and on request by the Person indemnified the Partnership shall advance expenses associated with defense of any related action; provided, however, that this indemnity does not apply to actions constituting bad faith, gross negligence, or a breach of the provisions of this Agreement.

*6.6*      *Power of Attorney.*  Each Partner appoints the Managing General Partner (and any liquidator pursuant to Section 11.2) as that Partner's attorney-in-fact for the purpose of executing, swearing to, acknowledging, and delivering all certificates, documents, and other instruments as may be necessary, appropriate, or advisable in the judgment of the Managing General Partner (or the liquidator) in furtherance of the business of the Partnership or complying with applicable law, including, without limitation, filings of the type described in Section 2.5.  This power of attorney is irrevocable and is coupled with an interest.   On request by the Managing General Partner (or the liquidator), a Partner shall confirm its grant of this power of attorney or any use of it by the Managing General Partner (or the liquidator) and shall execute, swear to, acknowledge, and deliver any such certificate, document, or other instrument.

## ARTICLE 7:  RIGHTS OF OTHER PARTNERS

**7.1**   *Information.*   In addition to the other rights set forth in this Agreement, each Partner is entitled to all information to which that Partner is entitled to have access pursuant to sections 153.551 and 153.552 of the Act under the circumstances and subject to the conditions therein stated and to such other information as it may reasonably request from time to time.

**7.2**   *Withdrawal.*   A Limited Partner does not have the right or power to withdraw from the Partnership as a limited partner.

**7.3**   *Consents and Voting.*

*(a)*   *In Sole Discretion of Partners.*   Subject to the provisions of Section 6.4(a) with respect to the Managing General Partner in its capacity as such, a Partner (including the Managing General Partner with respect to any Partnership Interest it may have as a Limited Partner) may grant or withhold its consent or vote its interest in its sole discretion, without regard to the interests of the Partnership or any other Partner, and subject to such conditions as it shall deem appropriate.

*(b)*   *Procedure.*   In any request for consent or approval from another Partner, the Managing General Partner may specify a response period, ending no earlier than the fifth and no later than the 15th Business Day following the date on which the Partner whose consent or approval is sought receives the request as described in Section 12.2.  If the receiving Partner does not respond by the end of this period, it shall be deemed to have consented to or approved the action set forth in the request.

**7.4**   *Meetings.*   On written request of Partners having a Required Interest, the Managing General Partner shall call, and at any time it may call, a meeting of the Partners to transact business that the Partners or any group of Partners may conduct as provided in this Agreement.  The call must be made by notice to all other Partners on or before the tenth day prior to the date of the meeting specifying the location and the time and stating the business to be transacted at the meeting, which must include any items the Partners requesting the meeting have specified in their request.  The chairperson of the meeting shall be an individual the Managing General Partner specifies.  At the meeting, the Partners may take any action included in the notice of the meeting by vote of Partners present, in person or by proxy, constituting Partners whose consent is required for that action pursuant to the other provisions of this Agreement.  With respect to other matters, the meeting must be conducted in accordance with rules that the Managing General Partner and a Required Interest establish or, failing agreement on rules, in accordance with Roberts Rules of Order.

## ARTICLE 8:  TAXES

**8.1**   *Tax Returns.*   The Managing General Partner shall cause to be prepared and filed all necessary federal and state income tax returns for the Partnership, including making the

20

elections described in Section 8.2.  Each Partner shall furnish to the Managing General Partner all pertinent information in such Partner's possession relating to Partnership operations that is necessary to enable the Partnership's income tax returns to be prepared and filed.

**8.2**     *Tax Elections.*     The Partnership shall make the following elections on the appropriate tax returns:

(a)     to adopt the calendar year as the Partnership's fiscal year;

(b)     to adopt the cash method of accounting unless an alternate method of accounting is required for federal income tax purposes, and to keep the Partnership's books and records using the income-tax method;

(c)     if a distribution of Partnership property as described in section 734 of the Code occurs or if a transfer of a Partnership Interest as described in section 743 of the Code occurs, on request by notice from any Partner, to elect, pursuant to section 754 of the Code, to adjust the basis of Partnership properties; and

(d)     any other election the Managing General Partner may deem appropriate and in the best interests of the Partners.

**8.3**     *Tax Matters Partner and Partnership Representative.*

(a)     For tax years beginning on or before December 31, 2017, the Managing General Partner shall be the "tax matters partner" of the Partnership pursuant to section 6231(a)(7) of the Code (the "*Tax Matters Partner*").  The Tax Matters Partner shall take such action as may be necessary to cause each other Member to become a "notice partner" within the meaning of section 6223 of the Code.  The Managing General Partner shall inform each other Partner of all significant matters that may come to its attention in its capacity as tax matters partner by giving notice thereof on or before the fifth Business Day after becoming aware thereof and, within that time, shall forward to each other Partner copies of all significant written communications it may receive in that capacity.  The Managing General Partner may not take any action contemplated by sections 6222 through 6232 of the Code without the consent of a Required Interest, but this sentence does not authorize the Managing General Partner to take any action left to the determination of an individual Partner under sections 6222 through 6232 of the Code.

(b)     For tax years beginning after December 31, 2017, the "partnership representative" of the Partnership pursuant to section 6223(a) of the Code shall be the Managing General Partner, or any Partner or other person with a substantial presence in the United States designated by the Managing General Partner in the manner prescribed by the Internal Revenue Service (the "*Partnership Representative*").  The Partnership Representative is authorized to make any election or other decision on behalf of the Partnership that is provided or contemplated by sections 6221 through 6241 of the Code, or Treasury Regulations, notices or other guidance issued thereunder (the "*Revised Partnership Audit Provisions*"), including an election the effect of which will be a legal

imposition on one or more current or former Partners (or assignees of Partnership Interests) to reflect Internal Revenue Service adjustments to income, gain, loss, deduction or credit in certain federal income tax returns of the Partners (or assignees of Partnership Interests) and to pay associated federal income taxes, interest and penalties; provided, however, that if the Partnership qualifies to elect pursuant to section 6221(b) (or successor provision) of the Code to have Subchapter C of Chapter 63 of the Code not apply to any federal income tax audits and other proceedings, the Partnership Representative shall cause the Partnership to make such election.  The Partners agree to provide that information as may be requested in connection with the Revised Partnership Audit Provisions.  In the event the Partnership pays any amount of federal income taxes, interest or penalties pursuant to the provisions of the Revised Partnership Audit Provisions, the payment shall be treated as an expense of the Partnership or as a distribution to one or more of the Partners (or assignees of Partnership Interests), as the Partnership Representative shall determine is appropriate and consistent with this Partnership Agreement.

## ARTICLE 9:  BOOKS, RECORDS, REPORTS, AND BANK ACCOUNTS

*9.1*     ***Books and Records.***  The books and records of the Partnership shall be kept, at the expense of the Partnership, by the Managing General Partner or by the Person the Managing General Partner may from time to time designate, at the principal place of business of the Partnership in accordance with this Agreement and on a basis consistent with the method of accounting used for federal income tax purposes, and shall reflect all Partnership transactions and be appropriate and adequate for conducting the Partnership business.  Within 90 days following the end of each calendar year, the Managing General Partner shall cause to be prepared and submitted to each Partner an unaudited balance sheet and an unaudited income statement of the Partnership.  A copy of each Partnership tax return required to be filed with any governmental authority shall be delivered to each Partner at least ten days before such return is filed.

*9.2*     ***Inspection.***  Each Partner, at its sole cost and expense, shall have the right to inspect, copy, and audit the books and records of the Partnership during reasonable business hours at the principal place of business of the Partnership.  No Person other than a Partner (or its duly authorized representative) and the Partnership's independent accountants shall have any right to inspect the books and records of the Partnership for any purpose whatsoever.  Each Person that inspects the books and records of the Partnership shall maintain the confidentiality of the information received pursuant to or in connection with such inspection.

*9.3*     ***Bank Accounts.***  All funds of the Partnership shall be deposited in its name in an account or accounts maintained in one or more national or state bank or banks designated from time to time by the Managing General Partner.  The Managing General Partner may commingle Partnership funds with those of another Person incident to conducting Partnership business, such as to pay expenses associated with assets owned jointly by the Partnership and such other Person, but shall take steps to ensure that records are kept which clearly reflect the equitable ownership of such funds.  Checks shall be drawn upon the

Partnership account or accounts only for the purposes of the Partnership and shall be signed by such signatory party or parties as may be designated by the Managing General Partner.

## ARTICLE 10:  WITHDRAWAL, BANKRUPTCY, REMOVAL, DEATH, ETC.

**10.1**    *Withdrawal, Bankruptcy, Etc. of General Partner.*

*(a)*    *General Partner Agrees Not to Withdraw.*  Each General Partner agrees that it will not withdraw from the Partnership as a general partner even though it is permitted by section 153.155(b) of the Act.  If a General Partner withdraws from the Partnership in violation of this covenant, its withdrawal shall be effective on the 90th day following written notice of the withdrawal to all other Partners.  On a withdrawal in violation of this Section 10.1(a), the Partnership may (i) recover damages from the withdrawing General Partner, including, without limitation, the reasonable cost of obtaining replacement of the services that General Partner is obligated to perform, (ii) pursue any other remedies available under applicable law, (iii) effect recovery of damages by offsetting those damages against the amount otherwise distributable to that General Partner, and (iv) reduce the Limited Partner's Partnership Interest into which that General Partner's Partnership Interest may be converted pursuant to Section 10.3 or the applicable provisions of the Act.

*(b)*    *Cessation of General Partner Status.*  A General Partner does not cease to be a general partner in the Partnership on the occurrence of an event of the type described in section 153.155(a)(8)-(10) of the Act, but ceases to be a general partner (and, in the case of the Managing General Partner, Managing General Partner) on the substantial completion of winding up of that General Partner's activities.  A General Partner shall notify each other Partner that an event of the type described in section 153.155(a)(4), (5), or (8)-(11) of the Act has occurred with respect to it on or before the fifth Business Day after that occurrence.

*(c)*    *Selection of New Managing General Partner.*  Following any notice that contrary to the covenant in Section 10.1(a) the Managing General Partner is withdrawing, or following the occurrence of an event of the type described in section 153.155(a)(4)-(11) of the Act with respect to the Managing General Partner (without regard to the lapse of any time periods therein), a Required Interest by written consent may select a new Managing General Partner.  If the Person selected is not already a General Partner, it shall be admitted to the Partnership as a General Partner effective immediately prior to the existing Managing General Partner's ceasing to be a General Partner with a Sharing Ratio and a Commitment that the Limited Partners making the selection specify, but only if the new Managing General Partner has made a Capital Contribution in an amount the Limited Partners making the selection specify and has executed and delivered to the Partnership a document including the new Managing General Partner's notice address, its agreement to be bound by this Agreement, and its representation and warranty that the representation and warranties in Section 3.5 are true and correct with respect to it, and an agreement by such new Managing General Partner's spouse (if any) to be bound by the provisions of Section 3.3(d).  Notwithstanding the foregoing provisions of this Section 10.1(c), for the right to select a new Managing General Partner to exist or be exercised, the Partnership must receive a favorable opinion of the Partnership's legal counsel or of other legal counsel

23

acceptable to the Limited Partners making the selection to the effect that the selection and admission (if any) will not result in the loss of limited liability of any Limited Partner. Notwithstanding the foregoing provisions of this Section 10.1(c), the selection of a new Managing General Partner shall be rescinded (and the existing Managing General Partner shall continue as such) if the event that permitted the selection of a new Managing General Partner is an event of the type described in section 153.155(a)(5) of the Act that with the passage of time would cause the existing Managing General Partner to become a Bankrupt Partner but that situation does not continue and the existing Managing General Partner does not become a Bankrupt Partner.

**10.2     *Removal of Managing General Partner.*** The Managing General Partner may be removed only with the written consent of a Required Interest. Any action for removal also must (a) select a new Managing General Partner, (b) specify the Capital Contribution it is to make, which shall be deposited with the Partnership, and its Sharing Ratio and Commitment, and (c) be accompanied by an instrument executed by the new Managing General Partner including the new Managing General Partner's notice address, its agreement to be bound by this Agreement, its representation and warranty that the representation and warranties in Section 3.5 are true and correct with respect to it and an agreement by such new Managing General Partner's spouse (if any) to be bound by the provisions of Section 3.3(d). The new Managing General Partner so selected shall be admitted to the Partnership as a General Partner with the Sharing Ratio and the Commitment specified, and the removal is effective only immediately subsequent to that admission. Notwithstanding the foregoing provisions of this Section 10.2, for the right to remove the Managing General Partner to exist or be exercised, the Partnership must receive a favorable opinion from the Partnership's legal counsel (or other counsel acceptable to the Limited Partners consenting to the removal) that the removal of the Managing General Partner and the selection and admission of a new Managing General Partner will not result in the loss of limited liability of any Limited Partner. No other General Partner may be removed.

**10.3     *Conversion of Interest.*** Simultaneously with a Managing General Partner's ceasing to be Managing General Partner following the admission of a new Managing General Partner pursuant to Section 10.1(c) or 10.2, the former Managing General Partner's Partnership Interest as a General Partner automatically is converted into that of a Limited Partner having a Sharing Ratio and a Commitment equal to the Sharing Ratio and the Commitment of the former Managing General Partner as a General Partner immediately prior to its ceasing to be a General Partner, and the former Managing General Partner automatically is admitted to the Partnership as a Limited Partner.

**10.4     *Bankrupt Partners.*** If any Partner becomes a Bankrupt Partner, any or all of the other Partners who are Family Members in the same Family Line as the Bankrupt Partner shall have an optional preferential right (exercisable by giving written notice to the Bankrupt Partner or its representative at any time prior to the 120th day after such Partners receive notice of the occurrence of the event causing a Partner to become a Bankrupt Partner) to acquire the Partnership Interest of the Bankrupt Partner. If none of such Partners exercise such option, the Partnership shall have an optional preferential right (exercisable

by giving written notice to the Bankrupt Partner or its representative at any time prior to the 150th day after the Managing General Partner receives notice of the occurrence of the event causing a Partner to become a Bankrupt Partner) to acquire the Partnership Interest of the Bankrupt Partner.  If neither the Partners who are Family Members in the same Family Line as the Bankrupt Partner nor the Partnership exercise their respective options, any or all of the Partners, excluding the Bankrupt Partner, shall have an optional preferential right (exercisable by giving written notice to the Bankrupt Partner or its representative at any time prior to the 180th day after such Partners receive notice of the occurrence of the event causing a Partner to become a Bankrupt Partner) to acquire the Partnership Interest of the Bankrupt Partner.  The Partnership, or those Partners who elect to exercise a preferential right set forth in this Section 10.4 ("*Option Partners*") (each in the proportion that its Sharing Ratio bears to the aggregate Sharing Ratio of all Option Partners unless otherwise agreed by all Options Partners), shall buy, and the Bankrupt Partner or its representative shall sell, the Partnership Interest of the Bankrupt Partner at the Appraised Value (determined as of the date of the event the Partner becomes a Bankrupt Partner) on the Payment Terms.  The payment to be made to the Bankrupt Partner or its representative under this Section 10.4 is in complete liquidation and satisfaction of all the rights and interest of the Bankrupt Partner and its representative (and of all Persons claiming by, through, or under the Bankrupt Partner and its representative) in and in respect of the Partnership, including, without limitation, any Partnership Interest, any rights in specific Partnership property, and any rights against the Partnership and (insofar as the affairs of the Partnership are concerned) against the Partners, and constitutes a compromise to which all Partners have agreed pursuant to section 153.203 of the Act.  If at the time a Partner becomes a Bankrupt Partner there is only one other Partner, that other Partner has all the rights of the Partnership and the Managing General Partner under this Section 10.4. If the Bankrupt Partner is the existing Managing General Partner, the Partnership Interest subject to this Section 10.4 includes the Partnership Interest as a Limited Partner into which that Managing General Partner's Partnership Interest is converted under Section 10.3, along with any other Partnership Interest it may have.

### ARTICLE 11:  DISSOLUTION, LIQUIDATION, AND TERMINATION

**11.1    *Dissolution.***

*(a)*    **In General.**  The Partnership shall dissolve and its affairs shall be wound up on the first to occur of the following:

(i)    the written consent of each of the Partners;

(ii)    the date set forth in Section 2.6;

(iii)    a Managing General Partner's ceasing to be a General Partner as described in Section 10.1(a) or 10.1(b), unless a new Managing General Partner is selected and admitted as provided in Section 10.1(c); or

(iv)    any other event causing dissolution as described in sections 11.051 and 11.058 of the Act (other than an event described in section 153.155(a)(4) or (8)-(11) of the Act, except as provided in Sections 10.1(b) and 11.1(a)(iii));

*(b)*    ***Automatic Reconstitution.***    Notwithstanding Section 11.1(a), if dissolution thereunder occurs due to an "event of withdrawal" (as defined in section 153.155(a) of the Act) with respect to a General Partner and a Managing General Partner either remains or is being admitted pursuant to Section 3.2, 10.1(c), or 10.2, the Partnership automatically shall be reconstituted and the remaining General Partner(s) shall, and hereby agree to, carry on the business of the Partnership.

*11.2*    ***Liquidation and Termination.***    On dissolution of the Partnership, unless it is reconstituted and continued as provided in Section 11.1(b), the Managing General Partner shall act as liquidator or may appoint one or more other Persons as liquidator; provided, however, that if the Partnership dissolves on account of an event of the type described in section 153.155(a)(4)-(11) of the Act with respect to the Managing General Partner, the liquidator shall be one or more Persons selected in writing by a Required Interest.  The liquidator shall proceed diligently to wind up the affairs of the Partnership and make final distributions as provided herein.  The costs of liquidation shall be borne as a Partnership expense.  Until final distribution, the liquidator shall continue to operate the Partnership properties with all of the power and authority of the Managing General Partner.  The steps to be accomplished by the liquidator are as follows:

(a)    As promptly as possible after dissolution and again after final liquidation, the liquidator shall cause a proper accounting to be made of the Partnership's assets, liabilities, and operations through the last day of the calendar month in which the dissolution shall occur or the final liquidation shall be completed, as applicable;

(b)    The liquidator shall pay all of the debts and liabilities of the Partnership (including, without limitation, all expenses incurred in liquidation and any advances made by the Partners as provided in Section 4.3) or otherwise make adequate provision therefor (including, without limitation, the establishment of a cash escrow fund for contingent liabilities in such amount and for such term as the liquidator may reasonably determine); and

(c)    All remaining assets of the Partnership shall be distributed to the Partners as follows:

(i)    the liquidator may sell any or all Partnership property, and any resulting gain or loss from each sale shall be computed and allocated to the capital accounts of the Partners;

(ii)    with respect to all Partnership property that has not been sold, the fair market value of such property shall be determined and the capital accounts of the Partners shall be adjusted to reflect the manner in which the unrealized income, gain, loss, and deduction inherent in such property (that has not been reflected in the capital accounts previously) would be allocated among the Partners if there

were a taxable disposition of such property for the fair market value of such property on the date of their distribution; and

(iii)     Partnership property shall be distributed among the Partners in accordance with the positive capital account balances of the Partners, as determined after taking into account all capital account adjustments for the taxable year of the Partnership during which the liquidation of the partnership occurs (other than those made by reason of this clause (iii)); and such distributions shall be made by the end of the taxable year of the Partnership during which the liquidation of the Partnership occurs (or, if later, on or before the 90th day after the date of such liquidation).

All distributions in kind to the Partners shall be made subject to the liability of each distributee for its allocable share of costs, expenses, and liabilities theretofore incurred or for which the Partnership shall have committed prior to the date of termination and such costs, expenses, and liabilities shall be allocated to such distributee pursuant to this Section 11.2.  The distribution of cash and/or property to a Partner in accordance with the provisions of this Section 11.2 shall constitute a complete return to the Partner of its Capital Contributions and a complete distribution to the Partner of its Partnership Interest in all the Partnership's property, and constitutes a compromise to which all Partners have consented within the meaning of section 153.203 of the Act.  To the extent that a Partner returns funds to the Partnership, it has no claim over against any other Partner for those funds.

*11.3*     *Cancellation of Certificate.*  On completion of the distribution of Partnership assets as provided herein, the Partnership is terminated, and the General Partners (or such other Person or Persons as the Act may require or permit) shall cause the cancellation of the Certificate and any other filings made as provided in Section 2.5 and shall take such other actions as may be necessary to terminate the Partnership.

## ARTICLE 12:  GENERAL PROVISIONS

*12.1*     *Offset.*  Whenever the Partnership is to pay any sum to any Partner, any amounts that Partner owes the Partnership may be deducted from that sum before payment.

*12.2*     *Notices.*  All notices, requests, or consents provided for or permitted to be given under this Agreement must be in writing and must be given either by depositing that writing in the United States mail, addressed to the recipient, postage paid, and registered or certified with return receipt requested or by delivering that writing to the recipient in person, by courier, or by facsimile or electronic transmission.  A notice, request, or consent given under this Agreement is effective on receipt by the Person to receive it.  All notices, requests, and consents to be sent to a Partner must be sent to or made at the addresses given for that Partner on Exhibit A or in the instrument described in Section 3.3(f), 10.1(c) or 10.2, or such other address as that Partner may specify by notice to the other Partners.  Any notice, request, or consent to the Partnership must be given to the Managing General Partner.

**12.3     Entire Agreement; Supersedure.**  This Agreement constitutes the entire agreement of the Partners and their Affiliates relating to the Partnership and supersedes all prior contracts or agreements with respect to the Partnership, whether oral or written.

**12.4     Effect of Waiver or Consent.**  A waiver or consent, express or implied, to or of any breach or default by any Person in the performance by that Person of its obligations with respect to the Partnership is not a consent or waiver to or of any other breach or default in the performance by that Person of the same or any other obligations of that Person with respect to the Partnership.  Failure on the part of a Person to complain of any act of any Person or to declare any Person in default with respect to the Partnership, irrespective of how long that failure continues, does not constitute a waiver by that Person of its rights with respect to that default until the applicable statute of limitations period has run.

**12.5     Amendment or Modification.**  This Agreement may be amended or modified from time to time only by a written instrument executed by all of the Partners.

**12.6     Binding Effect.**  Subject to the restrictions on Dispositions set forth in this Agreement, this Agreement is binding on and inures to the benefit of the Partners and their respective heirs, legal representatives, successors, and assigns.  In particular, any reference herein to a "Partner" and a Partner's "Partnership Interest" shall include, respectively, a Person to whom a Partner's Partnership Interest has been validly Disposed but who has not yet been admitted to the Partnership as a Partner (an "*Assignee*") and the Assignee's Partnership Interest so acquired for all purposes of this Agreement except that the Disposition does not entitle the Assignee to (i) participate in the management and affairs of the Partnership, (ii) become a Partner of the Partnership, or (iii) exercise any rights of a Partner of the Partnership unless and until the Assignee becomes a Partner of the Partnership.

**12.7     Governing Law; Severability.**  This Agreement is governed by and shall be construed in accordance with the law of the State of Texas, excluding any conflict-of-laws rule or principle that might refer the governance or the construction of this Agreement to the law of another jurisdiction.  If any provision of this Agreement or its application to any Person or circumstance is held invalid or unenforceable to any extent, the remainder of this Agreement and the application of that provision to other Persons or circumstances is not affected and that provision shall be enforced to the greatest extent permitted by law.

**12.8     Further Assurances.**  In connection with this Agreement and the transactions contemplated by it, each Partner shall execute and deliver any additional documents and instruments and perform any additional acts that may be necessary or appropriate to effectuate and perform the provisions of this Agreement and those transactions.

**12.9     Waiver of Certain Rights.**  Each Partner irrevocably waives any right it may have to maintain any action for dissolution of the Partnership or for partition of the property of the Partnership.

**12.10    Indemnification.**  To the fullest extent permitted by law, each Partner shall indemnify the Partnership and each other Partner and hold them harmless from and against

all losses, costs, liabilities, damages, and expenses (including, without limitation, costs of suit and attorney's fees) they may incur on account of any breach by that Partner of this Agreement.

**12.11   Counterparts.**  This Agreement may be executed in any number of counterparts with the same effect as if all signing parties had signed the same document.  All counterparts shall be construed together and constitute the same instrument.

**12.12   Headings.**  The headings in this Agreement are inserted for convenience and identification only and are not intended to describe, interpret, define, or limit the scope, extent, or intent of this Agreement or any provision hereof.

**12.13   Deemed Assent.**  The failure of a Partner to respond, within the response period set forth in the request in question (which response period shall not be less than seven business days nor more than twenty business days from the date on which the Partner in question is deemed to have received such request pursuant to Section 12.2), either in the affirmative or in the negative, to any request he receives from the Managing General Partner relating to a proposed act in respect of which such Partner is entitled to vote pursuant to this Agreement, shall conclusively be deemed for all purposes to be a vote by such Partner in favor of the act set forth in such request.

**12.14   Special Provisions Concerning Trustees as Partners.**  An estate or trust may become a Partner in the Partnership.  In each such case, although the executors or trustees as a matter of form are referred to as "Partners," they participate herein in their representative capacities only.  A reference in this Agreement to the interest of the "Partner" in any such case refers to the entire interest held in the particular estate or trust, regardless of the number or identity of the executors or trustees then serving under that estate or trust.  The death, resignation, or removal of any such executor or trustee shall not constitute a Disposition nor give rise to a dissolution of the Partnership.  All rights and obligations of a Partner with respect to the interest in the Partnership held in trust shall be exercisable by or enforceable against such executor's or trustee's successor executor(s) or successor trustee(s), or any remaining executor(s) or trustee(s), each in their representative capacity only.  As provided in Sections 114.084 and 114.085 of the Texas Trust Code, it is expressly agreed that any liability which may arise with respect to an interest in the Partnership so held in trust, including, without limitation, liability to a Partner, to the Partnership, or to third Persons, shall be limited to (i) the assets of the trust that have been contributed to the Partnership and (ii) other assets of that trust (including assets in the hands of trust beneficiaries which were distributed from such trust), and in no event out of assets owned by such trustee individually (other than assets distributed to him from such trust) or in any capacity other than as trustee of that trust.  It is agreed that the liability with respect to an interest in the Partnership held in an estate is similarly limited to the assets of the estate and assets in the hands of estate beneficiaries which were distributed from the estate.

*[SIGNATURE PAGE FOLLOWS.]*

EXECUTED as of the Effective Date.

GENERAL PARTNER:                    INTERNATIONAL TEXTILE, INC.


By: _Nishat Azad Khan_____
     Nishat Azad Khan, President


LIMITED PARTNER:                    _Nishat Azad Khan_____
     NISHAT AZAD KHAN

**EXHIBIT A**

PARTNERS' NAMES, ADDRESSES AND SHARING RATIOS

| Partner's Name and Address | Sharing Ratio |
|---|---|
| ***General Partner:*** | |
| International Textile, Inc.<br>1906 Sand Hollow Lane<br>Katy, Texas 77450<br>nishatazadkhan@gmail.com | 1.00% |
| ***Limited Partner:*** | |
| Nishat Azad Khan<br>1906 Sand Hollow Lane<br>Katy, Texas 77450<br>nishatazadkhan@gmail.com | 99.00% |
| TOTAL | 100.00% |

i