United States District Court
Southern District of Texas
**ENTERED**

September 07, 2023

Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **NISHAT KHAN,** | § | |
| **INTERNATIONAL LINEN, LTD.,** | § | |
| **and INTERNATIONAL TEXTILE,** | § | |
| **INC.,** | § | |
| | § | |
|   **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Case No. 4:21-CV-02602** |
| | § | |
| **UZMA KHAN KHAISHGI,** | § | |
| **MALIHA KHAN,** | § | |
| | § | |
|   **Defendants,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **ADNAN KHAN,** | § | |
| | § | |
|   **Third Party Defendant.** | § | |

## MEMORANDUM OPINION AND ORDER

This is an inter-generational family dispute over the ownership of a family-owned textiles business located in Karachi, Pakistan. The mother and son, on one side, and two daughters, on the other, are embroiled in legal battles over the family business in both this Court and two different proceedings in Pakistan. This case was originally filed by the mother and two of the business entities against the daughters, but the daughters have asserted counterclaims against their mother and added third-party claims against their brother. The mother and son have moved to dismiss some of the daughters' counterclaims and have requested the Court to abate this case in deference to the Pakistani proceedings.

Pending before the Court are Plaintiffs' Motion to Dismiss the Original Counterclaims of Uzma Khaishgi and Maliha Khan Pursuant to Federal Rule of Civil Procedure 12(b)(6), (Dkt. No. 38), and Plaintiffs' Motion for Abstention in Deference to Pakistani Proceedings, (Dkt. No. 43).  After reviewing the Motions, the Responses, the Replies, the Sur-Replies, the record, and the applicable law, the Court **DENIES** the Motion to Dismiss, (Dkt. No. 38), and **DENIES** the Motion to Abstain, (Dkt. No. 43).

## I.      BACKGROUND[1]

Husband and wife duo Azad Ahmed Khan ("Azad") and Nishat Azad Khan ("Nishat") founded International Textile, Inc. ("Textile") in Karachi, Pakistan in the 1970s. (Dkt. No. 33 at 4, ¶ 15).  Azad served as CEO of Textile, (*id.* at 4, ¶ 17), a manufacturer and exporter of terry towels, hospital gowns, and other textile products.  (*Id.* at 4, ¶ 15). As Textile grew, wholesalers in the United States became its primary customers, (*id.*), and Azad and Nishat eventually immigrated to the United States with their children and settled in Katy, Texas.  (*Id.* at 4, ¶ 16).  Azad and Nishat had on multiple occasions gifted shares in Textile to their three children: their son, Adnan A. Khan ("Adnan"), and two daughters, Uzma Khan Khaishgi ("Uzma") and Maliha Khan ("Maliha").  (*Id.* at 4, ¶ 17). As a result of those gifts, each child owned between 15% and 18% of the Textile shares, and Azad and Nishat, the parents, collectively owned just under 50%.  (*Id.*).

---

[1]    For purposes of addressing the Motion to Dismiss, the Court accepts all factual allegations in the Defendant's counterclaims, (Dkt. No. 33), as true and views them in the light most favorable to the Defendants.  *See White v. U.S. Corrections, L.L.C.*, 996 F.3d 302, 306–07 (5th Cir. 2021).

In 2002, Azad and Nishat established International Linen, Ltd. ("Linen"), a Texas limited partnership located in Houston, to serve as the North American distributor for products manufactured by Textile in Pakistan.  (Dkt. No. 1-1 at 6, ¶ 15); (*see also* Dkt. No. 33 at 4–5, ¶ 19).  Linen, in turn, is managed by its general partner, International Textile, Inc. ("ITI"), a Texas S-Corp.  (Dkt. No. 1-1 at 6, ¶ 15); (*see also* Dkt. No. 33 at 4–5, ¶ 19).  Linen and ITI were 100% owned by Nishat and Azad.  (Dkt. No. 33 at 5, ¶ 21).  Textile historically paid Linen 5% of Textile's revenues as "sales commissions."  (*Id.* at 4–5, ¶ 19).

When Azad died in 2014, Nishat succeeded him as Textile's CEO and Chairman until 2016, when she stepped down to let Adnan take over as CEO.  (*Id.* at 5, ¶ 22).  As CEO, Nishat suspended payment of dividends to the shareholders (primarily, herself and her children) and increased payments to Linen for "sales activities."  (*Id.*).  Uzma and Maliha were upset with the change, as they owned no interest in Linen, and Textile made no other distributions to them.  (*Id.* at 5–6, ¶¶ 22–25).

After years of fighting, the family members entered into a written agreement, whereby Uzma and Maliha would release all claims against Nishat, Adnan, and the businesses and, in exchange, Nishat would transfer a 15% ownership interest in each of ITI and Linen into a separate irrevocable trust for each child—Uzma, Maliha, and Adnan.  (*Id.* at 6–7, ¶¶ 26–29).  In August 2020, Nishat transferred the shares, and Uzma, Maliha, and Adnan, as trustees of their respective trusts, became limited partners in Linen and shareholders in ITI.  (*Id.* at 7, ¶ 29).

After the settlement terms were completed, the daughters' frustrations with being excluded from the family business returned.  (*Id.* at 7, ¶ 30).  Despite millions of dollars

being transferred each year from Textile to Linen, no portion of those funds was ever distributed to Uzma or Maliha via their trusts, and Nishat refused to provide any information or access to the books for Linen.  (*Id.* at 7, ¶¶ 30–31).

Things then began to spiral quickly:

- March 26, 2021: The daughters sent legal notice to Nishat and Textile in Pakistan, complaining about Nishat and Textile's alleged wrongdoings related to Linen.  (*See* Dkt. No. 43-3).

- May 17, 2021: Uzma's 523,439 shares of Textile were transferred to Adnan, supposedly based on a secret 2002 transaction whereby Adnan purchased the shares from Uzma but with an agreement that Uzma remain the record owner until Adnan exercised his rights to convert them.  (Dkt. No. 33 at 8–9, ¶ 35); (*see also* Dkt. No. 43-11).

- May 20, 2021: Uzma demanded the return of her converted Textile shares.  (Dkt. No. 33 at 9, ¶ 37); (*see also* Dkt. No. 43-12).  On May 21, 2021, Uzma and Maliha filed a Rule 202 Petition in Texas state court for pre-suit discovery, seeking access to Linen's books.  (Dkt. No. 33 at 7–8, ¶ 32); (*see also* Dkt. No. 43-7).

- May 28, 2021: Nishat unilaterally rescinded the transfer of both daughters' ownership interests in Linen and ITI to their respective trusts.  (Dkt. No. 33 at 8, ¶ 34); (*see also* Dkt. No. 43-14 at 4).

- June 17, 2021: Nishat, Adnan, and Textile filed an ex parte application for an injunction against Uzma in Karachi, Pakistan (the "Pakistan Injunction

Action"), to require the Securities and Exchange Commission of Pakistan ("SECP") to record the transfer of Uzma's Textile shares to Adnan and to enjoin Uzma from "causing any disruption or hindrance for recording the transfer[.]"  (Dkt. No. 43-4 at 13); (*see also* Dkt. No. 43 at 5–6)).

- June 18, 2021: The court in the Pakistan Injunction Action entered an interim injunction prohibiting Uzma from acting and portraying herself as a Textile shareholder.  (Dkt. No. 43-5 at 2).

- July 2, 2021: Nishat, individually and on behalf of ITI and Linen, sued her daughters and their trusts in Texas state court, asserting both contractual and extracontractual claims.  (*See* Dkt. No. 1-1).

- August 11, 2021:  The daughters (individually and on behalf of their trusts) removed the Texas case to federal court, (*see* Dkt. No. 1), and asserted counterclaims for fraud, breach of contract, and breach of fiduciary duty and requested the appointment of a receiver, (*see* Dkt. No. 2).

- November 25, 2021: Maliha filed a shareholder lawsuit against Textile, Adnan, and Nishat in Pakistan (the "Maliha Shareholder Action").  (Dkt. No. 43-8).

In this lawsuit, both sides previously moved to dismiss each other's claims under Rule 12(b)(6).  (Dkt. No. 5 (Uzma & Maliha)); (Dkt. No. 12 (Nishat)).  Judge Lynn Hughes granted both in part and denied both in part, dismissing all of Nishat's claims except her claim for promissory estoppel and dismissing the daughters' fraud claim.  (*See* Dkt. No. 29); (Dkt. No. 30).

The daughters then added a third-party claim against their brother, Adnan, and amended their counterclaims to assert claims against Nishat and Adnan for conversion and conspiracy to convert, civil theft, unjust enrichment, and sought a declaratory judgment.  (Dkt. No. 33 at 9–14).  Nishat and Adnan have moved to dismiss Uzma and Maliha's claims under Rule 12(b)(6), (Dkt. No. 38), and have also moved for the Court to abstain in favor of the concurrent proceedings occurring in Pakistan, (Dkt. No. 43).  The Court will address each Motion in turn.

## II.   MOTION TO DISMISS UNDER RULE 12(B)(6)

In their Motion to Dismiss, Nishat and Adnan argue that the claims for conversion of Linen and ITI equity should be dismissed because the Court already dismissed the same claims in the previous May 20, 2022 Opinion on Dismissal.  (Dkt. No. 38 at 5–7).  Additionally, they argue that the newly asserted claims for conversion, conspiracy, and civil theft regarding Uzma's Textile shares do not meet the Rule 12 pleading standard.  (*Id.* at 7–8).  Finally, they argue that the conversion claim fails to state a claim for relief cognizable under Texas law because ownership interest in a corporate entity, under Texas law, is intangible property that cannot be converted.  (*Id.* at 8–9).  The Court will address—and reject—each argument in turn.

### A.   LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss for "failure to state a claim upon which relief can be granted."  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  "[T]he pleading

standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than . . . 'labels and conclusions.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  The defendant, as the moving party, bears the burden of proving that no legally cognizable claim for relief exists.  *Flores v. Morehead Dotts Rybak, Inc.*, No. 2:21-CV-00265, 2022 WL 4740076, at *2 (S.D. Tex. Sept. 29, 2022) (citing 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed.)).

In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept the plaintiff's factual allegations as true and view those allegations in the light most favorable to the plaintiff.  *White v. U.S. Corrections, L.L.C.*, 996 F.3d 302, 306–07 (5th Cir. 2021).  The court must evaluate whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974).  "Dismissal . . . is appropriate where the plaintiff fails to allege 'enough facts to state a claim to relief that is plausible on its face' and thus does not 'raise a right

to relief above the speculative level.'"  *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 148 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965).

### B.   THE COURT DID NOT PREVIOUSLY DISMISS UZMA AND MALIHA'S CONVERSION COUNTERCLAIM

In their first argument, Nishat and Adnan argue that Uzma and Maliha's conversion claim relating to the Linen and ITI shares were previously dismissed by the Court.  (Dkt. No. 38 at 5–7); (*see also* Dkt. No. 33 at 11–12, ¶¶ 51–56 ("Count III")).  They say that the claim for conversion in the First Amended Counterclaim, (Dkt. No. 33 at 11–12, ¶¶ 51–56), was also asserted in the Original Counterclaim, (Dkt. No. 2 at 8–9, ¶¶ 37–43).  (*See* Dkt. No. 38 at 6).  Next, they point to the final sentence in the Court's May 20, 2022 Opinion on Dismissal, which concludes, "All other claims are dismissed."  (Dkt. No. 29 at 6).  According to Nishat and Adnan, because the Court's opinion did not explicitly hold that the conversion claim—pending at the time—"remains," the Court's use of a Mother Hubbard clause[2] "unequivocally dismissed Uzma and Maliha's claim for conversion[.]"  (Dkt. No. 38 at 6).

In response, Uzma and Maliha point out that "[n]o part of this Court's earlier ruling expressly addressed Uzma and Maliha's claims for conversion, and for good reason: no one moved to dismiss those claims."  (Dkt. No. 40 at 2).  Uzma and Maliha argue that "[t]he premise of Nishat and Adnan's argument is that the Court dismissed

---

[2]   A Mother Hubbard clause in an order "mean[s] the statement, 'all relief not granted is denied', or essentially those words" and such language "does not indicate that" the order "is final for purposes of appeal."  *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 203–04 (Tex. 2001).  "The Mother Hubbard clause . . . [has] found its way into every kind of order" and is "inherently ambiguous[.]"  *Id.* at 206.

Uzma and Maliha's conversion claims with no motion, no advance notice, no stated reason, and no analysis." (*Id.* at 3). As the Court must provide advance notice and an opportunity to respond before dismissing under Rule 12(b)(6), *see Century Surety Co. v. Blevins*, 799 F.3d 366, 372 (5th Cir. 2015), such an action would have been reversible error.

The Court agrees with Uzma and Maliha. The Court did not dismiss Uzma and Maliha's conversion claim via a Mother Hubbard clause imprecisely included in the prior Opinion on Dismissal, but, importantly, omitted from the Partial Dismissal Order. (*See* Dkt. No. 29 at 6); (*see also* Dkt. No. 30). The partial dismissal order clearly dismisses only Uzma and Maliha's fraud claim, along with most of Nishat's claims, and does not purport to dispose of any unenumerated claims. (Dkt. No. 30). The conversion claim was not before the Court at that time and, thus, survived the Partial Dismissal Order, whether or not the Court explicitly said so. Nishat and Adnan make no substantive arguments for dismissal of this claim. (*See generally* Dkt. No. 38). Therefore, the Motion to Dismiss as to the Linen-and-IT-shares conversion claim is denied.

### C.   UZMA'S CLAIMS FOR CONVERSION, CONSPIRACY TO CONVERT, AND THEFT OF HER SHARES IN TEXTILE SATISFY RULE 12'S PLEADINGS REQUIREMENTS

Next, Nishat and Adnan ask the Court to dismiss Uzma's claims for conversion and conspiracy to convert (Count IV) and theft of Uzma's shares of Textile (Count V) in the First Amended Counterclaim. (Dkt. No. 38 at 7–8); (*see also* Dkt. No. 33 at 12–13, ¶¶ 57–67). They say that the claims for conversion, conspiracy to convert, and theft lack factual support and fail to meet the plausibility standard of Rule 12. (Dkt. No. 38 at 7).

1.   **Conversion**

Under Texas law, "[c]onversion is the unauthorized and unlawful assumption and exercise of dominion and control over the personal property of another to the exclusion of, or inconsistent with, the owner's rights." *Freezia v. IS Storage Venture, LLC*, 474 S.W.3d 379, 386 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (citing *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 446 (Tex. 1971)). "The elements of conversion are: (1) the plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) the defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with the plaintiff's rights; and (3) the defendant refused the plaintiff's demand for return of the property." *Id.* at 386–87.

In "Count IV: Conversion and Conspiracy to Convert Uzma's Shares in [Textile]," Uzma pleads that she was the rightful owner of the 523,439 shares of Textile. (Dkt. No. 33 at 12, ¶ 58). She next pleads that "Adnan and Nishat, using their collective power and control over [Textile], have wrongfully exercised dominion and control over Uzma's shares in [Textile] to the exclusion of Uzma and in derogation of her rights." (*Id.* at ¶ 60). Uzma also pleads the following facts:

> On or about May 17, 2021, Adnan, with Nishat's assistance and agreement, instructed [Textile]'s corporate secretary to transfer Uzma's 523,439 shares to Adnan. To support the transfer, Adnan tendered copies of Uzma's stock certificates along with forged and falsified transfer deeds, claiming he had purchased Uzma's shares. Adnan absurdly claimed that some nineteen years before, in 2002, when their father was still alive and ran the company, Adnan purchased Uzma's shares in a secret and undocumented transaction where

10

> Uzma would remain the record owner of the shares indefinitely, but Adnan would have the unmitigated right to terminate Uzma's ownership interest at will, and convert her shares to himself, if Uzma ever questioned his anticipated future management of the company.

(*Id.* at 8–9, ¶ 35). She also alleges that, "[a]fter Adnan and Nishat converted Uzma's shares in [Textile], Uzma demanded their immediate return, but Adnan and Nishat ignored her demand. Since then, Adnan and Nishat have taken no steps to return the shares . . . ." (*Id.* at 9, ¶ 37). The Court holds that together, these allegations contain enough facts to state a claim for conversion that is "plausible on its face." *See, e.g.,* *Montoya*, 614 F.3d at 148.

### 2.   Conspiracy to Convert

"In Texas, the essential elements of civil conspiracy are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Civelli v. J.P. Morgan Sec., L.L.C.*, 57 F.4th 484, 492 (5th Cir. 2023) (quoting *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983)) (cleaned up). "To establish a meeting of the minds, there must be an agreement among the alleged conspirators and each must have a specific intent to commit the act." *Id.* (quoting *San Antonio Credit Union v. O'Connor*, 115 S.W.3d 82, 91 (Tex. 2003)) (cleaned up).

In Count IV, Uzma alleges that, "Adnan and Nishat conspired and agreed that Adnan would unlawfully appropriate Uzma's shares in [Textile], and Adnan proceeded to do so with the intent to permanently deprive Uzma of her interests." (Dkt. No. 33 at 12, ¶ 59). She further alleges that "Adnan and Nishat, using their collective power and

11

control over [Textile], have wrongfully exercised dominion and control over Uzma's shares in [Textile] to the exclusion of Uzma and in derogation of her rights." (*Id.* at ¶ 60). As previously quoted, Uzma further describes the meeting of the minds and the overt act in paragraph 35, quoted above. (Dkt. No. 33 at 8–9, ¶ 35). Uzma alleges that "Nishat and Adnan schemed to convert Uzma's 16% interest in [Textile] and give it to Adnan," (*id.*), and describes the specific action taken on May 17, 2021 in tendering stock certificates, "along with forged and falsified transfer deeds," and how they "instructed [Textile's] corporate secretary to transfer" Uzma's shares to Adnan. (*Id.*). Finally, Uzma alleges that she was actually damaged in the loss of the value of her shares in Textile as a result of Adnan and Nishat's conspiracy to convert. (*Id.* at 12, ¶¶ 60, 62). The Court holds that together, these allegations contain enough facts to state a claim for civil conspiracy that is "plausible on its face." *See, e.g., Montoya*, 614 F.3d at 148.

### 3. <u>Texas Theft Liability Act</u>

Under the Texas Theft Liability Act ("TTLA"), "[a] person who commits theft is liable [civilly] for the damages resulting from the theft." Tex. Civ. Prac. & Rem. Code § 134.003(a). To recover for a civil theft under the TTLA, a plaintiff must establish: (1) the plaintiff had a possessory right to property; (2) the defendant unlawfully appropriated property in violation of the theft provisions of the Texas Penal Code; and (3) the plaintiff sustained damages as a result of the theft. *Wellogix, Inc. v. Accenture, LLP*, 788 F.Supp.2d 523, 542 (S.D. Tex. 2011) (citing the relevant provisions of the TTLA and the Texas Penal Code). Section 31.03(a) of the Texas Penal Code provides that a person "commits an offense [of theft] if he unlawfully appropriates property with intent to deprive the owner

of property."  Tex. Penal Code § 31.03(a) (2017).  "Appropriation of property is unlawful if it is without the owner's effective consent."  *Wellogix*, 788 F.Supp.2d at 543 (quoting Tex. Penal Code § 31.01(2) (internal quotation marks omitted)).  "Deprive means, among other things, 'to withhold property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner.'"  *Id.* at 542–43 (quoting Tex. Penal Code § 31.01).  The intent required is the intent to deprive the plaintiff "of its property permanently or for an extended period of time," *id.* at 543 (citing Tex. Penal Code § 31.03), and this intent can be inferred from the surrounding circumstances.  *Powers v. Caremark, Inc. (In re Powers)*, 261 F. App'x 719, 722 (5th Cir. 2008) (per curiam) (citing *McGee v. State*, 774 S.W.2d 229, 234 (Tex. Crim. App. 1989)).

In Count V, Uzma alleges that she is the rightful owner of the Textile shares.  (Dkt. No. 33 at 13, ¶ 64).  Next, she alleges that Adnan and Nishat conspired to and did unlawfully appropriate Uzma's shares in Textile, with the intent to permanently deprive Uzma of her interests.  (*Id.* at ¶ 65).  She describes how Adnan, together with Nishat, instructed the corporate secretary to transfer Uzma's shares to Adnan without her consent, and how Adnan forged and falsified transfer deeds to effectuate the transfer.  (*Id.* at 8–9, ¶ 35).  She alleges that, as a result of their theft, she has lost the value of her shares of Textile.  (*Id.* at 13, ¶ 67).  Based on these allegations, Plaintiff has adequately set forth a substantive cause of action for civil theft under the TTLA.

### D.     UZMA'S CLAIM FOR CONVERSION

In their third argument, Nishat and Adnan argue that, under relevant Texas law, an ownership interest in a corporate entity is an intangible asset that cannot be converted, and, therefore, Uzma's claim for conversion of the Textile shares fails as a matter of law. (Dkt. No. 38 at 8–9).  In support of their argument that "Texas courts unanimously hold that ownership interests in a corporate entity are intangible in nature," Nishat and Adnan cite one 1937 Texas Court of Criminal Appeals case concerning criminal theft and one 1979 New Jersey intermediate court tax case.  (*See* Dkt. No. 38 at 8–9) (citing *Bourland v. State*, 112 S.W.2d 720, 721–22 (Tex. Crim. App. 1937); *Registrar & Transfer Co. v. Dir., Div. of Taxation, Dep't of Treasury*, 398 A.2d 1335, 1338 (N.J. Super. Ct. App. Div. 1979)).

Nishat and Adnan's argument wholly lacks merit.  While conversion claims generally do not apply to intangible property like intellectual property or trade secrets, *see Quantlab Techs. Ltd. (BVI) v. Godlevsky*, 719 F.Supp.2d 766, 777 (S.D. Tex. 2010), Texas courts and the Fifth Circuit have consistently recognized claims for conversion of corporate stock.  *See, e.g., Arthur W. Tifford, PA v. Tandem Energy Corp.*, 562 F.3d 699, 705 (5th Cir. 2009) (collecting cases);[3] *First Republic Life Ins. Co. v. Republic of Tex. Sav. Ass'n*, 776 F.2d 520, 522 (5th Cir. 1985); *Gulf Coast Farmers Co-op. v. Valley Co-op Oil Mill*, 572 S.W.2d 726, 728 (Tex. App.—Corpus Christi 1978, no writ); *Earthman's, Inc. v. Earthman*, 526 S.W.2d 192, 204 (Tex. App.—Houston [1st Dist.] 1975, no writ).  Because a claim for

---

[3]     *B & H Warehouse, Inc. v. Atlas Van Lines, Inc.*, 490 F.2d 818, 821 (5th Cir. 1974); *Rio Grande Cattle Co. v. Burns*, 82 Tex. 50, 17 S.W. 1043, 1046 (Tex. 1891); *Rodriguez v. Ortegon*, 616 S.W.2d 946, 949 (Tex. App.—Corpus Christi 1981, no writ); *Sandor Petrol. Corp. v. Williams*, 321 S.W.2d 614, 619 (Tex. Civ. App.—Eastland 1959, writ ref'd n.r.e.).

conversion of corporate shares is actionable under Texas law, Nishat and Adnan's motion to dismiss Uzma's conversion claim must be denied.

### E. SUMMARY OF 12(B)(6) MOTION

Nishat and Adnan's Rule 12(b)(6) Motion to Dismiss challenged Uzma and Maliha's conversion of Linen and ITI shares against Nishat (Count III), Uzma's conversion of and conspiracy-to-convert Textile shares claims against Nishat and Adnan (Count IV), and Uzma's theft of Textile shares claim against Nishat and Adnan (Count V). (*See generally* Dkt. No. 38). The Court's use of a Mother Hubbard clause in its previous Opinion on Dismissal, stating that "[a]ll other claims are dismissed," did not constitute a merits determination that Uzma and Maliha's claim for conversion of their Linen and ITI shares fails as a matter of law, as that claim was not before the Court. Uzma's claims concerning her shares of Textile satisfy the Rule 12 pleading requirements and will not be dismissed on that basis. Similarly, the Court rejects Nishat and Adnan's argument that Uzma's claim for conversion of Textile fails as a matter of law because one cannot convert the equity interest in a corporate entity. As discussed, Texas courts and federal courts sitting in diversity have consistently recognized claims for conversion of corporate shares. Nishat and Adnan's Motion to Dismiss is denied.

## III.   MOTION TO ABSTAIN

In addition to moving to dismiss some of the claims, Nishat and Adnan have asked the Court to abstain from hearing this case pending resolution of the Pakistani proceedings because they say all aspects of this lawsuit are being actively litigated in Karachi, Pakistan. (*See generally* Dkt. No. 43).

### A.  LEGAL STANDARD

"Federal courts may decline to exercise their jurisdiction, in otherwise exceptional circumstances, where denying a federal forum would clearly serve an important countervailing interest, . . . for example where abstention is warranted by considerations of proper constitutional adjudication, regard for federal-state relations, or wise judicial administration." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716, 116 S.Ct. 1712, 1720–21, 135 L.Ed.2d 1 (1996) (cleaned up).  The Supreme Court has recognized four abstention doctrines, known as *Pullman*, *Younger*, *Burford,* and, relevant here, *Colorado River* abstention.  *See R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

*Colorado River* abstention permits federal courts to abstain from hearing a case properly before it based on concurrent proceedings in a different forum for reasons of "(w)ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation."[4]  *Colo. River*, 424 U.S. at 817, 96 S.Ct. at 1246

---

[4]    *Colorado River* concerned abstention in favor of concurrent state court proceedings.  424 U.S. at 817, 96 S.Ct. at 1246.  Neither the Supreme Court nor the Fifth Circuit has extended *Colorado River* abstention to foreign legal proceedings, though other courts in this District have done so.  *See, e.g., Tendeka, Inc. v. Glover*, No. 4:13-CV-01764, 2014 WL 978308, at *12 (S.D. Tex. Mar. 12, 2014); *Noble Drilling Servs., Inc. v. Noble Denton Marine, Inc.*, No. 4:09-CV-03074, 2010 WL 1790202, at *4 (S.D. Tex. May 4, 2020).  Because the Court concludes that the Pakistani proceedings are not "parallel" to this lawsuit, the Court need not consider whether *Colorado River* abstention applies on these facts.

The Court also notes that Nishat and Adnan did not raise a comity-of-nations argument in their Motion to Abstain, a principle of international law.  (*See generally* Dkt. No. 43).  "Comity is
(continue)

(quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952) (internal quotation marks omitted)).  "The first step and a necessary prerequisite in applying the *Colorado River* doctrine is to determine if the federal and state court actions are parallel or concurrent proceedings." *Bar Grp., LLC v. Bus. Intel. Advisors, Inc.*, 215 F.Supp.3d 524, 543 (S.D. Tex. 2017); *see also Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 395 n.7 (5th Cir. 2006).  Proceedings are "parallel" for the purposes of *Colorado River* abstention "when the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same." *Bar Grp.*, 215 F.Supp.3d at 543 (cleaned up).  "The central inquiry is whether there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *FinServ Cas. Corp. v. Settlement Funding, LLC*, 724 F.Supp.2d 662, 679 (S.D. Tex. 2010) (citing *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 592 (7th Cir. 2005)).

If the proceedings are, in fact, parallel, the Supreme Court has identified six factors to consider in determining whether "exceptional circumstances" exist making abstention appropriate: (1) which court has assumed jurisdiction over the res; (2) the relative inconvenience of the forums; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) whether and to what extent United States federal law provides the rules of decision on the merits; and

---

'the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws.'" *Derr v. Swarek*, 766 F.3d 430, 437 (5th Cir. 2014) (quoting *Hilton v. Guyot*, 159 U.S. 113, 164, 16 S.Ct. 139, 143, 40 L.Ed. 95 (1895)).

(6) the adequacy of the concurrent proceedings in protecting the rights of the party invoking federal jurisdiction. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 14–16, 23–26, 103 S.Ct. 927, 936–37, 941–42, 74 L.Ed.2d 765 (1983); *accord Murphy*, 168 F.3d at 738. The Court must carefully consider both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise. *Colo. River*, 424 U.S. at 818–19, 96 S.Ct. at 1247. Even when parallel proceedings exist, the federal court's balance is "heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone*, 460 U.S. at 16, 103 S.Ct. at 937.

Abstention should be the exception, rather than the rule, because when a federal court has jurisdiction, it also has a "virtually unflagging obligation" to exercise that jurisdiction. *Colo. River*, 424 U.S. at 817, 96 S.Ct. at 1246). The party seeking a stay or dismissal of the federal case in the event of concurrent state and federal suits bears the burden of establishing the propriety of abstention under *Colorado River*. *Tempur-Pedic N. Am., LLC v. Mattress Firm, Inc.*, No. 4:17-CV-01068, 2017 WL 1437299, at *1 (S.D. Tex. Apr. 24, 2017). Whether a federal court should abstain from hearing an action under one of the abstention doctrines, including *Colorado River*, is in the court's discretion. *See, e.g.*, *Murphy v. Uncle Ben's, Inc.*, 168 F.3d 734, 739 (5th Cir. 1999).

### B. NEITHER THE PAKISTAN INJUNCTION ACTION NOR THE MALIHA SHAREHOLDER ACTION IN PAKISTAN ARE PARALLEL PROCEEDINGS

The initial consideration in whether to exercise *Colorado River* abstention is determining whether the concurrent proceedings are parallel, s*ee Bar Grp.*, 215 F.Supp.3d at 543, which the Fifth Circuit has defined as those "involving the same parties and the

same issues." *RepublicBank Dallas Nat. Ass'n v. McIntosh*, 828 F.2d 1120, 1121 (5th Cir. 1987) (per curiam) (quoting *PPG Indus., Inc. v. Continental Oil Co.*, 478 F.2d 674, 682 (5th Cir. 1973)).   The parties dispute whether the American and Pakistani proceedings are truly parallel.  (*Compare* Dkt. No. 43 at 11–16) *with* (Dkt. No. 50 at 6–8).  Nishat and Adnan attempt to combine the two separate Pakistani proceedings into one "Pakistan Proceeding" for the purposes of their motion, though they are distinct proceedings in distinct courts with distinct parties.  (*See* Dkt. No. 43 at 11–16).  In response, Uzma and Maliha argue that neither Pakistani lawsuit involves all parties and all issues and, even combining the two, certain claims are not addressed by the Pakistani lawsuits.  (Dkt. No. 50 at 6–8).  Finally, Uzma and Maliha argue that the equities do not favor abstention because Nishat filed both this lawsuit *and* the Pakistan Injunction Action.  (*Id.* at 8–12).

The parties to the Pakistani lawsuits are:

- Pakistan Injunction Action: Textile, Adnan, and Nishat (as petitioners), and Uzma, Maliha, and the SECP (as respondents), (Dkt. No. 43-4 at 3);

- Maliha Shareholder Action: Maliha (as petitioner), and Textile, Adnan, Nishat, Ayesha Khan (Adnan's wife), and the SECP (as respondents), (Dkt. No. 43-8 at 3).

Notably absent from either Pakistani lawsuit are Linen, ITI, or the daughters' trusts.  The issues invoked in the two Pakistani lawsuits are:

- Pakistan Injunction Action: The transfer of Uzma's Textile shares to Adnan, (Dkt. No. 43-4);

- Maliha Shareholder Action: The management and operation of Textile, including breaches of fiduciary duty by officers and directors of Textile and the composition Textile's board of directors, (Dkt. No. 43-8).

Neither Pakistani lawsuit addresses the claims regarding Linen and ITI (Counts I, II, and III in the First Amended Counterclaim), the claim for unjust enrichment (Count V), or the claim for declaratory judgment (Count VI), nor has Uzma asserted a claim for damages in Pakistan related to the Textile share transfer.

"[A]lthough it may be that there need not be applied in every instance a mincing insistence on precise identity of [parties and issues], in this case the question is not even a close one." *McIntosh*, 828 F.2d at 1121. While the Pakistani proceedings—even if taken together—concern the same general subject matter as this lawsuit, and the proceedings have some issues common between them, many issues are disparate, and the parties are not the same. "Even in the instance of truly parallel cases, one pending in [foreign] and the other in federal court, current Supreme Court authority indicates that 'only the clearest of justifications' will warrant the federal court's staying its hand." *Id.* (quoting *Colo. River*, 424 U.S. at 819, 96 S.Ct. at 1247). Because the Pakistani proceedings are not parallel, the Court declines to invoke *Colorado River* abstention. Nishat and Adnan's Motion to Abstain is denied.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Dismiss the Amended Counterclaims and Third-Party Claims, (Dkt. No. 38), and Plaintiffs' Motion for Abstention in Deference to Pakistani Proceedings, (Dkt. No. 43), are **DENIED.**

It is SO ORDERED.

Signed on September 6, 2023.

**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**